# MELVIN EMORY KISAMORE, The Younger *v.* STATE OF MARYLAND

[No. 60, September Term, 1979.]

*Decided January 7, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ■ORTH, COLE and DAVIDSON, JJ.

*Arthur A. DeLano, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Valerie A. Leonhart, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Melvin Emory Kisamore, the younger, was charged under three indictments filed in the Criminal Court of Baltimore with armed robbery and a number of offenses incident to that crime. On 21 December 1977 he was convicted of the armed robbery upon his plea of guilty to that charge. On 3 April 1978 his request to withdraw the plea was denied, and a ten year sentence was imposed. Upon direct appeal the judgment was affirmed by the Court of Special Appeals in an unreported opinion. We granted a petition for certiorari filed by Kisamore and a conditional cross-petition filed by the State.

Plea bargaining played a prominent part in the proceedings leading to the judgment, and its role is reflected in the issues for decision on this review. The threshold question is whether a plea agreement had been reached by Kisamore and the State. If it had, we must determine whether the trial court erred in refusing to enforce it. If the trial court did so err,

we must decide whether the error was waived by the plea of guilty.

## I

This Court has recognized that plea bargains "when properly utilized, aid the administration of justice . . ." and, "within reason, should be encouraged." *State v. Brockman,* 277 Md. 687, 693, 357 A.2d 376 (1976). Plea agreements account for the disposition of an overwhelming percentage of all criminal cases, and serve to relieve "the overcrowding of our courts" and to "eliminate many of the risks, uncertainties and practical burdens of trial. . . ." *Id.* Thus, they "permit the judiciary and prosecution to concentrate their resources on those cases in which they are most needed, and further law enforcement by permitting the State to exchange leniency for information and assistance." *Id.*

We noted in *Brockman* that

the standard to be applied to plea negotiations is one of fair play and equity under the facts and circumstances of the case, which, although entailing certain contract concepts, is to be distinguished from what the State appears to advocate, the strict application of the common law principles of contracts. [277 Md. at 697.]

We explained:

The rigid application of contract law to plea negotiations would be incongruous since, for example, the trial court is not ordinarily bound by the compact and, as the State concedes, it cannot obtain "specific performance" of a defendant's promise to plead guilty. [*Id.*]

We thought that:

when a plea bargain has been agreed to by both a proper representative of the State and a defendant, and is not in violation of any law or public policy of this State, it would be a grave error to permit the

prosecution to repudiate its promises in a situation in which it would not be fair and equitable to allow the State to do so. [*Id.* at 698.]

As we saw it:

[F]airness and equity require that the State be held to its bargain if the defendant has to a substantial degree and in a proper manner performed his obligations, and is willing, but because of some action taken by the prosecution is unable, to fulfill the remainder of his promises. [*Id.* at 698-699.]

Our decision in *Miller v. State,* 272 Md. 249, 322 A.2d 527 (1974), was in accord with these principles. We held, quoting *Santobello v. New York,* 404 U.S. 257, 262, 92 S. Ct. 495 (1971) that "[i]f a guilty plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." [*Miller* at 252.][1]

The Maryland Rules of Procedure implement our view. As practiced in this State, plea bargaining has two aspects: the entering into an agreement and its acceptance by the court. Rule 733 deals with both aspects.[2] Section a authorizes a defendant or his counsel to enter into an agreement with the State's Attorney to plead guilty on any proper condition, including that the prosecutor will enter a *nolle prosequi* to

---

[1]. In Santobello v. New York, 404 U.S. 257, 92 S. Ct. 495 (1971), the defendant pleaded guilty "on condition that no sentence recommendation would be made by the prosecutor." *Id.* at 262. A different prosecutor than the one who had negotiated the plea appeared at the sentencing and recommended the maximum prison term. "The Supreme Court held that the defendant was entitled to relief regardless of whether the breach of the agreement was inadvertent or whether the sentencing judge was influenced by the prosecutor's recommendation." Miller v. State, 272 Md. 249, 252-253, 322 A.2d 527 (1974).

[2]. The Court of Appeals, by order dated 31 January 1977, approved and adopted, effective 1 July 1977, a revision of Chapter 700 concerning criminal causes. Maryland Rule 733 as then adopted was thereafter amended subsequent to the proceedings in this case. A new section was added and designated as § b. Former §§ b and c were redesignated as § c and § d, respectively. Other changes were of a housekeeping nature. The amendments are not material to the issues before us. To avoid confusion, references to the Rule hereinafter are as it now appears. Citations of sections and subsections are to sections and subsections of Rule 733 unless otherwise indicated.

certain charges, subsection 1, and that the prosecutor "will recommend, not oppose, or make no comment to the court with respect to a particular sentence, disposition, or other judicial action," subsection 5.

Section a 6 requires that the parties "will submit a plea agreement proposing a particular sentence, disposition or other judicial action to a judge for consideration. . . ." The recommendation of the State's Attorney is not binding on the court, and the court shall so inform the defendant. § b. If a plea agreement has been reached for a plea of guilty which contemplates a particular sentence, disposition or other judicial action, the defense counsel and the State's Attorney shall advise the judge at the time the plea is tendered.[3] The judge may accept or reject the agreement at that time or defer decision until after pre-sentence proceedings and investigation he deems necessary. Section c 1. "If the judge accepts the plea agreement, he shall accept the defendant's plea in open court and embody in his judgment the agreed sentence, disposition or other judicial action encompassed in the agreement, or with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement." Section c 3. But, "[t]he agreement of the State's Attorney relating to a particular sentence, disposition or other judicial action is not binding on the court unless the judge to whom the agreement is presented accepts it." Section c 2. Section d requires that "[a]ll proceedings pursuant to this Rule, including tender of the plea, advice by the court inquiry into the voluntariness of the plea or plea agreements, and inquiry into the factual basis for the plea shall be on the record."

## II

The indictments first came on for trial on 3 October 1977 in the Criminal Court of Baltimore.[4] The prosecutor was

---

3. The Rules Committee notes with regard to Rule 733:

> The trial judge should not participate in plea discussions. There can be, however, limited advance consultation with the trial judge concerning the probable disposition upon acceptance of a plea.

4. The trial of the case was somewhat confounded by the fact that two judges, three prosecutors and three defense counsel were at various times separately involved. In addition, certain proceedings were not recorded.

Charles Lamasa, Esq., an assistant state's attorney and the defense counsel was Steven Harris, Esq., an assistant public defender. Proceedings concerning the case went on for two days, the second day before Judge Robert L. Karwacki. The proceedings were not recorded. Trial on the merits was not reached.

The indictments were next called for trial on 20 December 1977 before Judge Marshall A. Levin. Sam Brave, Esq., an assistant state's attorney, appeared for the State, and Larry Jordan, Esq., a panel attorney, represented Kisamore. The court considered and denied a motion by Kisamore to dismiss the indictments because of prosecutorial misconduct. Apparently there had been a discussion in the judge's chambers about a plea bargain which, according to Kisamore, had been agreed upon and which he wanted enforced. Evidence on this matter was adduced through the testimony of Lamasa and Harris. We give a compendium of that evidence. Originally Assistant State's Attorney Stephen R. Tully had been assigned to prosecute the case. The State, through Tully, had offered a plea bargain. It would accept a plea of guilty to receiving stolen goods, make no recommendation as to sentence and enter a *nolle prosequi* on all other charges. This was not acceptable to Kisamore. He was willing to plead guilty to receiving and was satisfied with the indicated disposal of the other charges, but he desired that there be some assurance that the sentence imposed would not be more than three years. So, on 3 October 1977, when the case was first scheduled for trial, no plea agreement had been reached. Lamasa, who was to try the case, was not enthusiastic about the offer of the State — "I had gotten additional evidence that morning Mr. Tully did not have, and I felt it was a bad offer at the time" — but "since it was Mr. Tully's case and I was handling it for him, I decided to go ahead with the original plea offer." Kisamore elected a jury trial, and the case was continued until the next day. On 4 October it was sent to Part I of the Criminal Court of Baltimore where Judge Karwacki was presiding. The allegation of prosecutorial misconduct, which, as we have indicated, was subsequently resolved by Judge Levin on 20

December, was raised. The purported misconduct involved a man named Howard, who had confessed to committing the robbery charged to Kisamore. Howard had been interviewed by a representative of the State's Attorney without counsel being present, contrary to an agreement between the State and the Public Defender. This came to the attention of Judge Karwacki, apparently at a conference in his chambers, and disturbed him. The judge asked if the matter could be worked out and was told the status of the plea bargain negotiations. Lamasa informed the judge of the facts surrounding the charges against Kisamore and showed him "the rap sheet" on Kisamore. Judge Karwacki thereupon said that he would impose a sentence of three years on a plea of guilty of receiving stolen goods. This, of course, was what Kisamore had been seeking, and the concurrence by the judge in a sentence of three years was in no way contrary to the State's offer under which it had agreed to make no recommendation as to sentence. Harris went to the lockup and told Kisamore that he had spoken to Judge Karwacki and that if Kisamore pleaded guilty to receiving stolen goods, the sentence would be three years. Kisamore said: "If it's three years then, let's go, let's take it." Harris informed Judge Karwacki and Lamasa that "we got a deal, let's go." Kisamore was brought to the courtroom to tender a plea of guilty to receiving stolen goods on those terms. At that point, it is perfectly clear that both the State and Kisamore were willing that the case be disposed of upon a plea of guilty by Kisamore to receiving stolen goods, on which he would receive a sentence of three years with all other charges being *nol prossed.* In short, a plea agreement had been reached by the State and Kisamore, and we so hold.

Beyond question, except for an unexpected occurrence, the case would have been resolved forthwith pursuant to the plea agreement. Kisamore would have tendered the plea in open court. The judge, as he had indicated, would have accepted it and would have imposed a sentence of three years. The State would have entered a *nolle prosequi* to all other charges. That this was not consummated was due solely to the fact that the Public Defender was also disturbed about the possible

conflict of interest arising from his office representing both Kisamore and Howard. He arrived in the courtroom with the District Public Defender and conversed with Harris. He expressed his concern about the possible conflict of interest. Deeming it advisable, because of the possible conflict, that Kisamore be represented by counsel other than from the Public Defender's Office when the plea was formally entered, he directed that Harris request a postponement of the trial so other counsel, not tainted by a conflict, could be obtained for Kisamore. Harris explained to Kisamore why he could no longer represent him and informed the court and Lamasa of the situation. Complying with the necessary procedures, Harris "had the case postponed based on conflict of interest." Neither Harris nor Lamasa voiced a belief that the plea agreement had been affected by the postponement. Certainly Kisamore would not want the agreement voided; under it he obtained everything he had been seeking. He was willing to perform his obligations under the bargain at the time the case was postponed and remained willing thereafter. Any "impression" Lamasa may have had to the contrary was ill-founded. We think that the agreement remained in full force and effect, and that Judge Levin was wrong in concluding to the contrary.[5]

---

5. On the evidence of what had occurred on 4 October, Judge Levin denied Kisamore's motion to compel compliance with the plea bargain. Judge Levin found as a fact that Judge Karwacki did say that "if [Kisamore] would plead guilty to receiving stolen goods, that he would impose a sentence of not more than three years." But Judge Levin denied the motion because he concluded that "there never was a plea bargain; there never was a completed agreement." He observed that "[w]e really have to look at contract law to determine the answers to his problem," and then commented, ambiguously, that "[t]here was an offer and there was an acceptance, but the acceptance was removed. . . ." The judge thought that the acceptance had been removed "quite properly because the Public Defender recognized that there was a conflict of interest and they were dealing with very delicate matters which could have exploded. . . ." Lamasa had testified that postponement of the trial was requested "because of the possible conflict involved," and that he agreed to the postponement. It was his "impression" that the plea bargaining was "completely wide open," that the defense had rejected the plea in asking for the postponement. Harris, on the contrary, stated that the postponement was solely due to the possible conflict of interest, and was only to afford the opportunity to obtain another attorney and that the postponement had no effect on the plea agreement.

## III

We have determined that a plea bargain had been reached by the State and Kisamore and that it remained in effect even though it was not consummated on 4 October 1977 due to the postponement of the trial. Thus, when the case came on for trial on 20 December, Kisamore was entitled to tender a plea of guilty on the terms of the bargain just as he was entitled to do on 4 October. Again he was thwarted, this time by the opposition of the State, which forced him to seek the enforcement of the agreement. As the agreement had not been accepted by a judge on the record upon tender of the agreed plea in open court as Rule 733 requires, Judge Levin was not obliged to accept it. But Kisamore· had the right to have the plea presented to Judge Levin on the agreed terms without opposition by the State. The State, however, repudiated the agreement by opposing the acceptance of the plea. The State conceded in oral argument before us that the record contains no indication that Judge Levin would have rejected the plea agreement in the absence of objection by the State's Attorney. It was not fair and equitable to preclude Kisamore from tendering, without opposition by the State, a plea of guilty of receiving stolen goods conditioned upon a sentence of three years and the *nol pros* of all other charges. We hold that the court erred in not allowing Kisamore the opportunity to do so.[6]

## IV

After Judge Levin had refused to enforce the plea agreement, the balance of the court day was devoted to hearings on a motion to dismiss for denial of a speedy trial

---

6. Section c 4 of Rule 733 establishes the procedures upon rejection by a judge of a plea agreement. It provides that the judge "shall inform the parties of this fact and shall advise the defendant: that the court is not bound by the plea agreement; that the defendant may withdraw his plea; and that if the defendant persists in his plea of guilty ... the sentence or other disposition of the case may be less favorable to him than the plea agreement. If the defendant persists in his plea, the court may accept the plea of guilty only pursuant to section c of Rule 731 [after questions with respect to voluntariness]...." Subsection 4 envisions that at the time the agreement is rejected, the guilty plea has already been tendered.

and on a motion to suppress evidence. The court denied both motions.

When court convened the next day, 21 December 1977, the judge was informed that there was an agreement that Kisamore would plead guilty to robbery with a deadly weapon, and that the State would make no recommendation as to sentence, and that it would enter a *nolle prosequi* to all other charges before the court. Kisamore pleaded guilty to armed robbery on that basis, and the court accepted the plea, observing the procedural prerequisites for acceptance. Imposition of sentence was deferred to obtain reports from the Medical Officer and the Probation Department.

Kisamore came before the court for sentencing on 3 April 1978. He was then represented by H. Robert Scherr, Esq. It appeared that he desired to withdraw his plea of guilty. After a hearing on the matter, at which Kisamore testified, the court denied the request. A ten year sentence was imposed.

In affirming the judgment, the Court of Special Appeals assumed for the purpose of decision that Judge Levin's refusal to enforce the plea agreement was erroneous. It held, however, that "any error in that ruling was waived by the tender of the plea and its effective acceptance by the court on December 21, 1977."

The State puts the matter in perspective in its brief. "The sole question is whether [Kisamore's] plea was voluntary. . . . This is so because the ground for [his] motion to withdraw his guilty plea, as established by his testimony on April 3, 1978, was that his plea was not voluntary in that the State had previously offered and then repudiated a three year deal. . . . The question presented is whether [Kisamore's] December 21, 1977 guilty plea [to armed robbery] was voluntary in accordance with the United States Constitution."

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S. Ct. 160 (1970). In the unique circumstances of this case, we do not believe that the plea met this standard. In the final

analysis the plea was the product of the improper repudiation by the State of the plea agreement and the court's error in allowing it to do so. The improper repudiation and the erroneous ruling simply cannot be divorced from the entry of the plea. The responses of Kisamore during the inquiry by the court upon tender of the plea, do not, under the circumstances, establish that the plea was freely entered.

We have ascertained that there was a valid plea agreement whereby Kisamore was to plead guilty to receiving stolen goods, the sentence was to be three years and the State was to enter a *nolle prosequi* as to all other charges. We have determined that the State repudiated the agreement and that the trial court erred in refusing to preclude the State from doing so. We have found that the plea of guilty to armed robbery did not, in the circumstances, meet the constitutional test of voluntariness and was, therefore, improperly accepted. To allow the plea to stand would be to permit the State to repudiate its bargain with impunity. We recognized in *State v. Brockman, supra,* that this would be grave error, as not fair and equitable. 277 Md. at 698. It follows that justice requires that Kisamore be permitted to withdraw his plea. Md. Rule 731 f 1. We hold that the Court of Special Appeals was wrong in holding that the plea waived the error by the trial court in permitting the State to repudiate the plea agreement.

We reverse the judgment of the Court of Special Appeals and remand the case to it with direction to remand to the Criminal Court of Baltimore. In the trial court Kisamore may elect to maintain the status quo, or he may withdraw his guilty plea. If he withdraws the guilty plea he has two options. One is to rescind the plea agreements and plead anew to *all* charges, including those which the State had *nol prossed. Miller v. State,* 272 Md. at 255-256. The other is to abide by the plea agreement reached 4 October 1977 and, without any opposition by the State, plead guilty to receiving stolen goods upon the terms of that agreement — namely that the sentence be three years and that the State *nol pros* all other charges. Upon objection by Kisamore, the plea shall be presented to a judge presiding in the Criminal Court of

Baltimore other than Judge Levin. *See* Md. Rule 733 c 5. As we have indicated, the judge to whom the plea is tendered need not accept it, there having been no prior acceptance in open court, Rule 733 c 2 and 3. If the plea is rejected, the case shall proceed as prescribed by Rule 733 c 4.

> *Judgment of the Court of Special Appeals reversed; case remanded to that court with direction to remand to the Criminal Court of Baltimore for further proceedings in accordance with this opinion; pursuant to Md. Rule 882 f costs are not reallocated as part of this judgment.*