## NEAL BLINKEN v. STATE OF MARYLAND

[No. 13, September Term, 1980.]

*Decided October 9, 1980.*

The cause was argued before Thompson, Lowe and Couch, JJ.

*Phillip M. Sutley* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *J.*

*Donald Braden, State's Attorney for Queen Anne's County,* on the brief, for appellee.

·COUCH, J., delivered the opinion of the Court.

The appellant, Neal Blinken, was charged in a thirty-one count indictment with multiple violations of the Controlled Dangerous Substances law of Maryland.

On November 1, 1979 he appeared before the Circuit Court for Queen Anne's County and entered pleas of guilty to counts 1, 2, 3, and 4 of the indictment. These pleas were provisionally accepted [1] and a pre-sentence investigation was ordered. The appellant appeared for sentencing on January 3, 1980 and moved to withdraw his guilty plea. This motion was denied, and the Circuit Court finally accepted the guilty plea. The appellant was then sentenced to a term of imprisonment of ten years and fined $50,000.00.

By this appeal the appellant presents three questions:

"1. Did the Court abuse its discretion in denying appellant's request to withdraw his guilty plea prior to sentencing?

2. Was the appellant fully advised of the nature of the charges against him?

3. Was the appellant's plea of guilty free and voluntary?"

In view of the particular issues raised in this appeal, only a brief statement of the factual background of the case is necessary. Supplementary facts will be provided with our discussion of the issues.

When the appellant and his co-defendant, Kari Lou Pfau, appeared before the Circuit Court on November 1, 1979, they entered pleas of guilty to charges of (1) possession of marijuana in sufficient quantity to indicate an intent to distribute, (2) possession of marijuana, (3) possession of

---

1. In the Certificate of the Presiding Judge, dated 11-1-79, the judge wrote, "(4) [T]he Defendant's pleas of guilty are tentatively but not finally accepted by the Court provided their [sic] is a factual basis for the pleas and the representations made here today are confirmed by a P.S.I. report as to the defendant."

cocaine, and (4) keeping and maintaining a public nuisance, that is, a dwelling house used by drug abusers as a location in which to administer controlled dangerous substances. Miss Pfau also pleaded guilty to a fifth count of conspiracy to distribute marijuana.

The court concurrently asked both Pfau and Blinken if they had been furnished with the charging document, if they had read it, and discussed it with their attorney and if they understood every charge. They separately indicated their understanding of their charges. The court recited the five counts against Pfau, and then received Blinken's statement that he understood that the first four counts of his indictment were the same as those indicated in the case against Pfau.

The appellant stated his version of the plea agreement between himself and the State. This agreement included the sentencing of Pfau to an agreed ten year suspended sentence, five years probation, a $10,000 fine, and the State's entering a *nolle prosequi* on the additional conspiracy charges.[2] Additionally, the appellant indicated his understanding that in return for his pleading guilty to four charges, the remaining charges would not be pursued by the State and that he would be sentenced to ten years imprisonment and a $50,000.00 fine. The appellant was advised of his right to plead not guilty to the charges, to elect to be tried by a judge or a jury of twelve persons, and to require the State to prove its case beyond a reasonable doubt to the judge or to a unanimous jury. The factual basis of the pleas was then presented by a Sergeant of the Maryland State Police. The guilty pleas were tentatively accepted pending the receipt of pre-sentence investigations.

On December 12, 1979, the Circuit Court received a letter from the appellant indicating that he did not wish to pursue his guilty plea, and that he wished to preserve his right to appeal. When he appeared for sentencing on January 3, 1980, the appellant moved through counsel to withdraw the

---

2. The appellant was informed, however, that the plea agreement would not bar his being prosecuted for conspiracy by any other political subdivision of Maryland.

guilty plea. The appellant testified that he originally pleaded guilty because of certain mental and psychological pressure on him. He stated that the only reason for his guilty plea was the consideration given to Miss Pfau in the plea agreement, and that he was in a state of shock when he entered the plea. In that condition he claimed that he would have sold his life in order to spare Miss Pfau any unnecessary pain.

Miss Pfau testified as to her own belief that her plea agreement was linked with the plea of Blinken. After hearing the State's Attorney express his opposition to the appellant's motion to withdraw the guilty plea, the court overruled the motion, and sentenced the appellant.

## I. Withdrawal of the Guilty Plea

Maryland Rule 731 f. 1. states:

> "When justice requires, the court may permit a defendant to withdraw a plea of guilty or *nolo contendere* and enter a plea of not guilty at any time before sentencing."

On appeal, Blinken contends that the Circuit Court abused its discretion in refusing his request to withdraw his guilty plea. The appellant argues that his plea and that of his co-defendant were not "mutually dependent", and thus the court could have accepted Miss Pfau's plea while not necessarily accepting Blinken's plea. The appellant further maintains that justice required the court to permit the guilty plea to be withdrawn because the State failed to show that it would be prejudiced by the plea's withdrawal. While acknowledging that there is no well-defined standard for whether a trial judge should accept or deny a motion for withdrawal, the appellant believes that the facts of *Fontana v. State,* 42 Md. App. 203, 399 A.2d 950 (1979), *cert. denied,* 285 Md. 729 (1979), create such a standard.

We disagree with the appellant's contentions, and with his interpretation of the *Fontana* decision. In *Fontana* we held that a trial judge had not abused his discretion in denying the withdrawal of a guilty plea. In the facts of that case we

found very strong reasons for upholding the presumption that the trial judge properly exercised his discretion. We did not hold in *Fontana,* and we will not hold in the present case, that the presumption favoring a trial judge's ruling will be rebutted by the absence of prejudice to the State or delays in the case. The validity of a judge's discretionary ruling may be enhanced by evidence such as that in *Fontana,* but the absence of such evidence does not invalidate the ruling. Rather, such a rebuttal requires evidence on the record indicating that the State or the court acted to prejudice the appellant, or that the appellant was harmed by the failure of the court to follow guidelines of constitutional magnitude. *See Kisamore v. State,* 286 Md. 654, 664, 409 A.2d 719, 725 (1980), in which the Court of Appeals held that justice required that a defendant be permitted to withdraw his guilty plea after the State repudiated part of a plea agreement, and where the plea did not meet the constitutional test for voluntariness.

We hold that the granting of a motion to withdraw a guilty plea lies in the sound discretion of the trial judge, and unless there is a manifest abuse of that discretion, the denial of the motion will not be disturbed by this Court. *Palacorolle v. State,* 239 Md. 416, 420, 211 A.2d 828 (1965); *Watson v. State,* 17 Md. App. 263, 268, 301 A.2d 26 (1973).

Our examination of the record uncovers none of the egregious circumstances which have previously warranted an overturning of a judge's discretionary ruling. Instead, we find that the trial judge carefully examined the appellant at the time that the guilty plea was entered, and at the time when its withdrawal was requested. The judge allowed the appellant to explain the request for the withdrawal. During this inquiry the appellant, responding to questions from the State's Attorney, stated:

> "A The reason I felt it was, I plead guilty or agreed to plead guilty was because, while I believe I stated there was no physical coercion involved I thought there was a great deal of mental and psychological pressure on me. I just thought that I had a very, in my mind, that I had a valid appeal

position and I felt that my rights to appeal were certainly being extorted from me. I hope that's not too strong a word, but I felt my appeal right was being denied me by using Miss Pfau as a lever against me, so to speak, or a pawn in the game as opposed to her being her ownself, her own person.

Q Well, go back to my original question, what other reasons, if any, exist for your pleading guilty in this case other than the consideration given to Miss Pfau?

A Other than the reasons I had just stated that would be it.

Q That's the only reason you pled guilty on that day?

A Yes. . . .

I know it may sound difficult for you all to believe because you're in contact with this type of atmosphere all of the time. I mean it is your job, but my experience in this matter is very limited so, you know, maybe that's why I was a little hesitant to realize exactly what was happening. Just in principle alone, I don't think it is right to use another individual who has their own constitutional right and their own personality, their own life, their own being, I don't think it is right to use that person against another person as a force to take out the State's will on another person.

Q You knew when you were here November 1st if you proceeded to trial before that jury you would have preserved your appellate rights, didn't you?

A I knew, yes, that I would, but at the time —

Q Why did you enter a plea of guilty in view of that right available on November 1st?

A As I just finished explaining, it was like a state, I was in like a state of shock. I mean I was just forced emotionally, intellectually and physically by the repetity of the events taking place. I really didn't have a chance to realize the entire scope of what was happening and delve into my feelings."

The judge himself questioned the appellant concerning the claim that Miss Pfau was "held hostage" to coerce the appellant. The appellant discussed his situation directly with the judge on the record.

Before denying the appellant's request to withdraw the guilty plea, and finally accepting that plea, the trial judge discussed the applicable case law and determined that the appellant's guilty plea was made knowingly, intelligently, and voluntarily.

The examination of the record indicates only sparse and vague allegations concerning the judge's exercise of his discretionary authority. These allegations do not overcome the "presumption of verity" which the judge's ruling possesses. *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S. Ct. 1621 (1977). Therefore, we conclude that the trial judge did not abuse his discretion in denying the appellant's motion to withdraw his guilty plea.

## II. The Charges Against the Appellant

During the proceedings of November 1, 1979, the following colloquy took place between the trial judge and the two co-defendants:

> "THE COURT: Now, have you been furnished with a copy of the charging document, which is an indictment; have you read the same, discussed it with your attorney, and do you fully understand every charge lodged against you?
>
> MISS PFAU: Yes, Your Honor, I do.
>
> MR. BLINKEN: I do also, Your Honor.
>
> THE COURT: Sir?
>
> MR. BLINKEN: I do also, Your Honor.
>
> THE COURT: Miss Pfau, in this case do you understand that you are charged with having in your possession a controlled dangerous substance, to wit; marijuana, in sufficient quantity to reasonably indicate under all circumstances an intent to distribute that controlled dangerous substance, as to the first count.

The second count you are charged with possession of marijuana. These dates are April 28, 1979, in Queen Anne's County.

In the third count that you did possess cocaine, I'm summarizing, I'm not reading it. Fourth count you did keep and maintain a common nuisance, a dwelling house and place in Kent Island which is and has been resorted to by drug abusers for purposes of illegally administering controlled dangerous substances et cetera.

You have seen a copy of it, the counts which you have entered a plea of guilty, that you did unlawfully conspire with Neal Blinken to unlawfully and feloniously distribute a certain controlled dangerous substance, to wit; marijuana, on 28th of April, 1978. The rest of the counts are all conspiracy charges to which I understand the State's Attorney will enter a nul-pros. [sic] .

Now, Mr. Blinken, do you understand that the first four counts which you have entered a plea of guilty in the indictment are the same as those indicated in the case of Miss Pfau?

MR. BLINKEN: I understand, Your Honor.

THE COURT: And that the remaining counts are conspiracy counts, which I understand if the Court accepts the plea the State's Attorney will nul-pros. [sic]

MR. BLINKEN: I understand, Your Honor.

THE COURT: And you understand those, you say?

MR. BLINKEN: Yes, Your Honor, I do."

On appeal, Blinken contends that he was not thoroughly advised of the nature of the charges against him pursuant to Maryland Rule 731 c., which states:

"The court may not accept a plea of guilty without first questioning the defendant on the record to determine that the plea is made voluntarily, with

understanding of the nature of the charge and the consequences of the plea. The court may accept the plea of guilty even though the defendant does not admit that he is in fact guilty if the court is satisfied that there is a factual basis for the plea. If the court refuses to accept a plea of guilty, the court shall enter a plea of not guilty."

He indicates that the charges were read to his co-defendant, and that he was not advised of the essential elements of the various offenses.

This Court has held that in order to comply with Md. Rule 731 c. a judge must inquire on the record of the defendant whether he understands the charges to which he pled guilty. *Priet v. State,* 45 Md. App. 1, 410 A.2d 1107 (1980), *cert. granted,* May 2, 1980.

The record reveals that the judge conducted the requisite inquiry of the appellant before the guilty plea was tentatively accepted. The judge did not merely ask the appellant whether he had discussed the charges with defense counsel, but the judge continued the inquiry on the record to determine that the appellant understood the indictment. Furthermore, the appellant, being sworn, signed the transcript of his answers to the court's inquiry.[3]

Thus our examination of the record leads us to conclude that the court complied with Md. Rule 731 c.

III. *Voluntariness of Appellant's Plea*

During the November 1, 1979 proceeding the court inquired of the appellant and his co-defendant:

"THE COURT: Now, Miss Pfau, has the State's Attorney, or your lawyer, or any law enforcement officer or anyone else threatened you or used physical force or violence on you in any way to make you feel afraid, to influence you to plead guilty in this case?

---

**3.** The record contains the form completed in court during Blinken's interrogation by the judge, signed by the appellant, his counsel, and the Clerk of the Circuit Court.

MISS PFAU: No.

THE COURT: You, sir?

MR. BLINKEN: Not physical violence, Your Honor.

THE COURT: Well, no physical violence. What about any threats upon you?

MR. BLINKEN: No, Your Honor."

The court additionally asked the appellant if anyone had promised him anything to induce him to plead guilty or if plea negotiations had caused him to plead guilty. The appellant's response was limited to the facts of the negotiated plea, and the record does not reveal any sign of duress on the part of the appellant. Rather, the transcript indicates that the appellant felt on November 1, 1979 that his plea was made freely, understandingly, and voluntarily, without compulsion, intimidation, duress, or promise of leniency being made to him by anyone in order to procure his pleas, other than the accommodations set forth in the transcript.

The appellant contends on appeal, however, that his right of due process was denied by the apparent dependence of Miss Pfau's freedom upon the appellant's guilty pleas. The appellant argues that this dependence acted to render his pleas involuntary.

We disagree with this contention and find that the appellant entered voluntary guilty pleas.

The standard for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the options available to a defendant. *North Carolina v. Alford,* 400 U.S. 25, 91 S. Ct. 160 (1970). Our Court of Appeals has developed a four-part test for determining when the standard is met. In *Hudson v. State,* 286 Md. 569, 409 A.2d 692 (1979), the Court stated:

"This standard is met when the plea was entered by an accused:

(1) voluntarily, that is, not through coercion, terror, inducements or threats, subtle or blatant; and

(2) with an intelligent understanding, that is, not through ignorance or incomprehension:

    (a) of the nature of the offense to which he is pleading guilty; and

    (b) of the possible consequences of such a plea; and

(3) unconditionally, that is, without any condition or qualification;

(4) even though the accused denies his guilt, provided the prosecution demonstrates a strong factual basis for the plea and the accused clearly expresses a desire to enter it despite his professed belief in his innocence." *Id.* at 595.

Applying this test, we find that:

(1) The plea was made voluntarily because the "linkage" between the co-defendants' plea agreements did not constitute even a subtle inducement, but rather formed the accommodation which was the end product of plea negotiations.

(2) The indications of the appellant's intelligent understanding of the plea were elicited by the court's scrutiny.

(3) The appellant's signed statement which accompanied his guilty plea indicates no conditions or qualifications to the plea arrangement.

(4) Concurrent with the presentation of the factual basis of the case, the appellant indicated his desire for the entry of the guilty plea.

See *Miller v. State,* 32 Md. App. 482, 361 A.2d 152 (1976).

This application of the four-part test supports our holding that the appellant's guilty plea was properly entered and accepted. We find additional support from decisional law holding that the involvement of third party beneficiaries in plea negotiations is not an intrinsic infirmity to the

negotiated plea. Rather than constituting error, the use of lenient treatment for third parties as part of a negotiated plea simply requires that "special care must be taken to ascertain the voluntariness of" guilty pleas entered in such circumstances. *United States v. Tursi,* 576 F.2d 396, 398 (1st Cir. 1978).

The present case may be distinguished from circumstances in which prosecutors in plea bargaining may have used actual threats against unindicted third persons as a negotiating tactic. *United States v. Nuckols,* 606 F.2d 566, 569 (5th Cir. 1979). The appellant's situation compares with several cases in which "Sir Galahad" pleas have been negotiated in such a fashion as to protect co-defendants, as well as being advantageous to the negotiator. See Bishop "Federal Habeas Corpus in State Guilty Pleas", 71 F.R.D. 235, 278, for cases cited therein.

In a drug law violation case similar to the present case, Circuit Judge Feinberg rejected a relator's argument on the claim that a guilty plea was involuntary. In *United States ex rel. Cunningham v. Follette,* 397 F.2d 143 (2d Cir. 1968), he stated:

> "The principal bases for the assertion of involuntariness are that an assistant district attorney had said that if Cunningham wanted to take Miss Davis 'off the hook' he would have to 'take a plea,' and that Cunningham was under the influence of narcotics at the time of the guilty plea. We have examined the available record of the proceedings in the state court on May 11, 1964, when Cunningham pleaded guilty, and on June 16, 1964, when he attempted to withdraw his plea. Cunningham admitted that the alleged remark of the prosecutor was not made to him; he also disclaimed any promise from the court, but pointed to the 'pressure' of the indictment, undeniably present but hardly improper. The transcript shows that the state judge carefully questioned appellant when he took the guilty plea; it also reflects Cunningham's apparent misapprehension, when he

attempted to withdraw his plea, that just because he had handed the paper bag to Miss Davis, he did not have possession of the narcotics. It may be that Cunningham was also influenced by a desire to help Miss Davis. But that would not invalidate the plea in a case in which he was represented by competent counsel, the plea was voluntarily made with no inducement by the court or the prosecutor and the state was ready to go ahead at the time of the plea, as was the case here." *Id.* at 146.

For the foregoing reasons we find that the judgments and sentences of the Circuit Court must be affirmed.

*Judgments affirmed.*
*Costs to be paid by the appellant.*