# NEAL BLINKEN *v.* STATE OF MARYLAND

[No. 120, September Term, 1980.]

*Decided October 5, 1981.*

*Motion for reconsideration filed October 30, 1981; denied November 3, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Harold Buchman* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court. DIGGES, ELDRIDGE and DAVIDSON, JJ., dissent. DAVIDSON, J., filed a dissenting opinion at page 310 *infra,* in which DIGGES and ELDRIDGE, JJ., concur.

In this case we shall determine whether it was error for a trial court to decline to permit a defendant to withdraw from a plea agreement.

We begin by outlining the facts. Appellant, Neal Blinken, was a thirty-five-year-old college graduate who, the State had charged, was extensively involved in a major marijuana ring with the assistance of his twenty-one-year-old girlfriend, Kari Lou Pfau. Ms. Pfau, who had completed the tenth grade, had lived with appellant for four years and was later to become appellant's wife. Pursuant to a search of

what was believed to be the ring's warehouse, approximately one and one half tons of marijuana were seized. As an outgrowth of information obtained by a tap of appellant's brother's telephone, and a search of appellant's house pursuant to a search warrant, approximately four pounds of marijuana, traces of cocaine, and approximately $629,000 in cash were seized. Appellant and his girlfriend were arrested and appellant was charged in a thirty-one count indictment with multiple violations of the Controlled Dangerous Substances Law of Maryland and twenty-seven related counts of conspiracy. Appellant's girlfriend was similarly indicted.

On the morning of trial, the defendant's counsel, Phillip Sutley, Esquire, advised the trial court that the defendants had elected to change their pleas of not guilty to pleas of guilty, subject to a plea agreement with the State. The trial court then conducted a meticulous examination of the defendants, which we relate in pertinent part as follows:

> THE COURT: I'm going to ask both Miss Pfau and Mr. Blinken to stand, and hopefully you have seen a copy of the transcript for taking a plea of guilty by the Court, and I will address the question to both of you and ask Miss Pfau to answer first and then Mr. Blinken to answer second.
>
> Now you are to be sworn on this before the Court puts the question to you, so you hold up your right hand and the clerk will administer the oath to you.
>
> * * *
>
> THE COURT: I have to write down everything you say so if your answer can be concise, yes or no, then that is sufficient.
>
> * * *
>
> THE COURT: Now, have you been furnished with a copy of the charging document, which is an indictment; have you read the same, discussed it with

your attorney, and do you fully understand every charge lodged against you?

MISS PFAU: Yes, Your Honor, I do.

MR. BLINKEN: I do also, Your Honor.

THE COURT: Sir?

MR. BLINKEN: I do also, Your Honor.

THE COURT: Miss Pfau, in this case do you understand that you are charged with having in your possession a controlled dangerous substance, to wit: marijuana, in sufficient quantity to reasonably indicate under all circumstances an intent to distribute that controlled dangerous substance, as to the first count.

The second count you are charged with possession of marijuana. These dates are April 28, 1978, in Queen Anne's County.

In the third count that you did possess cocaine, I'm summarizing, I'm not reading it. Fourth count you did keep and maintain a common nuisance, a dwelling house and place in Kent Island which is and has been resorted to by drug abusers for purposes of illegally administering controlled dangerous substances et cetera.

You have seen a copy of it, the counts which you have entered a plea of guilty, that you did unlawfully conspire with Neal Blinken to unlawfully and feloniously distribute a certain controlled dangerous substance, to wit: marijuana, on 28th of April, 1978. The rest of the counts are all conspiracy charges to which I understand the State's Attorney will enter a nol-pros.

Now, Mr. Blinken, do you understand that the first four counts which you have entered a plea of guilty in the indictment are the same as those indicated in the case of Miss Pfau?

MR. BLINKEN: I understand, Your Honor.

THE COURT: And that the remaining counts are conspiracy counts, which I understand if the Court accepts the plea the State's Attorney will nol-pros.

MR. BLINKEN: I understand, Your Honor.

THE COURT: And you understand those, you say?

MR. BLINKEN: Yes, Your Honor, I do.

\* \* \*

THE COURT: (speaking to Miss Pfau) —

Now I am going to read this carefully and see if this is going to be your answer.

I ask you to give a detailed explanation of the promises and plea agreement made and who made them. The answer is you agreed upon a ten years sentence with a suspension; five years probation; $10,000 fine, payable in four and a half years in installments, to be determined by the Division of Parole and Probation. That is the amount of the installments.

The State will proceed promptly with the forfeiture of the automobile and currency seized as a result of the search and seizure warrant issued by this Court. Defendant waives the provision of Maryland Rule 746, which I explained, will explain to you to mean that you are supposed to have your trial within 120 days from the time that you first appeared in court. That 120 days under recent decision of the Court of Appeals of Maryland began on July 25, 1979 as to all cases then pending, which roughly means you should be tried, if you are tried at all, by November 25.

MR. BRADEN: 22, I think.

THE COURT: Figure 120 days. Do you understand that: Now the reason that they are requiring the waiver is that if the Court does not finally accept your plea agreement and then permits you to withdraw your plea of guilty here today and you

actually go to trial, that could very well fall beyond the 120 days. So do you understand that?

MISS PFAU: Yes, I do.

THE COURT: If the Court accepts the plea agreement, the State's Attorney will nol-pros the remaining counts. A PSI report, meaning a presentence investigation report, will be ordered, and defendant continued on bail until sentencing. Is that your understanding of the plea agreement as explained to you by your attorney?

MISS PFAU: Yes.

The Court then proceeded to examine the defendant Blinken:

THE COURT: The question is, has anyone promised you anything to induce you to plead guilty or have you either directly or thru your lawyer engaged in plea negotiations which would cause you to plead guilty in this case?

MR. BLINKEN: Yes, Your Honor.

After detailed examination, the court summarized the questions and answers as follows:

THE COURT: All right. Mr. Blinken, see if you accept this language as being correct? I asked you to give a detailed explanation of the promises made and who made them, and the answer is, the State's Attorney's agreement was that Kari Lou Pfau would receive the plea agreement stated by her, and I would receive a sentence of ten years and $50,000 fine, to be secured by the signing over of $50,000 of the proceeds of the sale of a farm on Kent Island, plus a mortgage on the farm for security payment of the fine on or before December 31, 1979. A PSI report and bail continued until sentencing. Will plead guilty to count 1 thru 4. Counts 5 thru 31 will be nol-prossed upon acceptance of the plea by the Court. It is understood that the nol-prossed counts,

which are conspiracy counts, will not bar a trial on conspiracy charges of this defendant in any other political subdivision of this State. Defendant waives the provision of Maryland Rule 746, which is the rule that you should be tried within 120 days from July 15, 1979. The State will promptly proceed with forfeiture of the automobiles and currency received as a result of the search and seizure warrant issued by this Court.

MR. BLINKEN: That is my understanding.

The court then proceeded to advise each of the defendants that he had the right to plead not guilty, to be tried by a jury and to require the State to produce proof of his guilt beyond a reasonable doubt, to be confronted by the witnesses against him, whom he could cross-examine, and the right to testify or not testify, and if he chose not to testify the jury could not consider this fact as an admission of guilt. The court further explained that by pleading guilty each gave up certain rights to appeal, such as to contest the validity of the search warrant.

The court then engaged the couple in the following colloquy:

THE COURT: Do you understand that if you plead guilty the sentence will be according to the plea agreement, and if not finally accepted you may withdraw your plea?

MISS PFAU: Yes, I understand.

THE COURT: And you, sir?

MR. BLINKEN: I also understand, Your Honor.

The court then asked the defendants to read the answers to the questions he had recorded and if correct to sign them. After being sworn the defendants signed the transcripts, whereupon the court made the following findings:

THE COURT: And in the case of Mr. Blinken the Court finds that Mr. Blinken, being represented by his privately employed counsel, Phillip Sutley,

> pleads guilty to counts 1 thru 4 of the indictment charging him with violation of the CDS law.
>
> The undersigned is fully satisfied and finds from an examination of the defendant Blinken as set forth in said transcript that he has been fully apprised of all of his constitutional rights and that his pleas of guilty are freely, understandingly and voluntarily made without any undue influence, compulsion, intimidation, force, duress or promise of leniency being made to him by anyone in order to procure, induce his pleas of guilty other than inducements as may be set forth in the transcript, namely the plea agreement.
>
> That the defendant's pleas of guilty are tentatively but not finally accepted by the Court provided there is in fact a basis for the pleas and the representations made here today are confirmed by a PSI report as to the defendant.

The court called upon the State to present the factual basis for the pleas, which was done, and after which the court found the pleas to be properly supported. Next, the court called upon defense counsel to proffer justification for the court's acceptance of the plea agreement. Defense counsel proffered that neither defendant had a record of criminal conviction. He discussed Ms. Pfau's medical history and continuing condition, and the fact that the two defendants were planning to marry. The court then reviewed the agreement and the justification, noting particularly the search and seizure problems which had contributed to the State's desire to obtain the defendants' pleas. The trial judge next reviewed the conditions incident to Ms. Pfau's agreement specifically. The transcript of the hearing at this point reflects:

> I want Miss Pfau to make sure she hears everything I am saying. *You still have a right to withdraw your plea, if you care to do so, anytime before the Court finally accepts it.*

That the probation required by the Court will be what we call intensive probation, which means that she will be continually under the jurisdiction of the Division of Correction, and more specifically will be seeing the probation agent frequently, either by visits to where she works or is living or will be required to report periodically to the office of the probation agent.

That, of course, if she violated those conditions then she has a possible ten years sentence to serve.

Do you fully understand that, Miss Pfau?

MISS PFAU: Yes.

THE COURT: So, as I have indicated, *the Court is accepting these tentatively, but not finally provided the representations made here today are confirmed by a PSI report as to each defendant.* [Emphasis supplied.]

Prior to the final disposition date, Appellant addressed a letter to the court indicating that he wished to withdraw his plea, in order that he might preserve his appellate rights, particularly in light of the issues which had been raised with respect to the search of his house,[1] but primarily because he protested the fairness of the State's procurance of his plea in exchange for the favorable agreement which had been given Ms. Pfau. At the January 3, 1980, disposition he again asserted these reasons and asked the court's permission to withdraw his plea. Ms. Pfau testified, as his witness, that she wished to continue with her plea. The court denied appellant's request to withdraw, finding that his initial decision had been made intelligently and voluntarily and with the benefit of counsel. The court concluded that appellant was merely engaged in "gamesmanship" with the court, as at that point, the State was already locked into its agreement with Ms. Pfau. Upon finding that the PSI report

---

1. At appellant's hearing on his guilty plea, the trial judge noted that the wiretap had been "found illegal by the judge in Baltimore County." The court also noted that there was "and probably would continue to be a strong challenge to the search warrant which was issued in this case."

bore out the representations which had earlier been made, the Court concluded that "justice" did not require the Court to permit appellant to withdraw his plea. After granting the defendant his right of allocution, the court proceeded to sentence him according to the plea agreement, and to inform him of his appellate rights. Thereafter, the proceedings were concluded.

On appeal appellant questioned, *inter alia,* the trial court's exercise of discretion in denying his request to withdraw on the grounds which had been asserted. The Court of Special Appeals affirmed the conviction, *Blinken v. State,* 46 Md. App. 579, 420 A.2d 997 (1980), holding that the allegations made concerning the judge's exercise of discretion were insufficient to overcome the "presumption of verity" which the trial court's ruling possesses and, therefore, there had been no abuse of discretion in denying Blinken's motion to withdraw his plea. 46 Md. App. at 585.

We granted certiorari to determine if the trial court abused its discretion by refusing to allow appellant Blinken to withdraw his guilty plea when the plea agreement had not been "finally accepted."

The disposition of this case, ultimately, depends on our interpretation of Maryland Rule 733, entitled "Plea Agreements." Section (a) of Rule 733 provides that "the defendant or his counsel may enter into an agreement with the State's Attorney to plead guilty or *nolo contendere* on any proper condition." Subsection (a)(6) provides that the parties will submit the agreement to the judge for consideration pursuant to section (c). Subsection (c)(1) provides that if a plea agreement has been reached pursuant to subsection (a)(6), then:

> defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant tenders the plea. The judge may accept or reject the agreement or may defer his decision as to acceptance or rejection until after the pre-sentence proceedings and investigation he deems necessary.

Subsection (c)(3) provides:

> If the judge accepts the plea agreement, he shall accept the defendant's plea in open court and embody in his judgment the agreed sentence, disposition or other judicial action encompassed in the agreement, or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.

Subsection (c)(4) continues:

> If the judge rejects the plea agreement, he shall inform the parties of this fact and shall advise the defendant that the court is not bound by the plea agreement, that the defendant may withdraw his plea, . . . .

The last section of Rule 733, Section (d), requires:

> All proceedings pursuant to this Rule, including tender of the plea, advice by the court inquiry into the voluntariness of the plea or plea agreements, and inquiry into the factual basis for the plea shall be on the record.

The thrust of Blinken's argument is that the court does not accept the guilty plea until it accepts the plea agreement and thus he maintains he has the unbridled right to withdraw the plea anytime before final disposition. But to adopt his argument is to have the cart pull the horse.

Fundamental to any plea agreement is a voluntary, factually supported guilty plea. A court may not enforce a plea agreement when the plea is involuntary or unsupported factually. We do not construe Rule 733(c)(3) to mean that the tender of a voluntary guilty plea and imposition of the agreed sentence must occur at one and the same time.

When a plea agreement is presented to the court, the judge must determine the adequacy of the proceeding in two ways: one, whether the defendant understands and voluntarily tenders his guilty plea which is supported factually, and two,

whether the agreement is one which punishes the defendant for his act as well as satisfies the public interest that justice not be thwarted. To make certain that step two is pursued properly, the Rule allows the judge to defer disposition until he has checked the information supplied by the defendant, his counsel and the State's Attorney. In other words, the court is given the opportunity to make an independent assessment of the agreement.

The appellant, nevertheless, argues that in the instant case, when the trial judge said he was "tentatively accepting the plea," that this implied that Blinken still had the right to withdraw anytime before final acceptance of the agreement. We disagree. When the court said it was tentatively accepting the defendant's guilty plea, it was acknowledging that something remained to be done — approval or rejection of the plea agreement. There was no question that the plea was voluntarily tendered to the court. The trial court had followed a meticulous and exemplary procedure in determining that the guilty pleas were voluntary. It had recorded the answers to the questions put to each of the defendants, read those answers back to the defendants, required the defendants to acknowledge their answers by signing the transcript thereof and then had the defendants' counsel countersign the transcript as a witness. The court then found as a fact that the pleas were voluntary and after the State's Attorney produced evidence of the crimes and the defendants' involvement therein, the court concluded that the factual basis for the pleas was adequate. It was at this point that the court determined that it could tentatively accept the pleas, subject to its receipt and review of presentence reports which would verify the defendants' history and their fitness for the proposed dispositions. However, if we had any doubt about the right of a defendant to withdraw a tendered plea as part of a plea bargain after such plea has been judged voluntary, it is removed when we examine Rule 733(c)(4). That part of the Rule clearly indicates to us that the defendant may not withdraw his tendered plea unless the court rejects the agreement. A con-

trary meaning would render the language of this subsection superfluous.

We hold, therefore, that once a plea of guilty has been tendered as part of a plea agreement and the court, after examination of the defendant on the record in open court, has determined that the plea is the result of the free, voluntary and intelligent act of the defendant and is factually supported by the evidence proffered as proof that the defendant committed the crime charged, the defendant may withdraw his plea only if the court permits him to do so or if the court ultimately rejects the plea agreement, in which case the defendant would have the absolute right to withdraw under Rule 733(c)(4).

We believe it is in the interests of fair play that a defendant not be permitted, unilaterally, to withdraw the plea which he has tendered pursuant to an agreement reached with the State. Under such circumstances the State would have a duty to uphold the terms of the agreement it had made. *See Kisamore v. State,* 286 Md. 654, 409 A.2d 719 (1980); *State v. Brockman,* 277 Md. 687, 357 A.2d 376 (1976); *Miller v. State,* 272 Md. 249, 322 A.2d 527 (1974). The defendant should be required to have no lesser duty.

Moreover, we believe that permitting a defendant arbitrarily to withdraw his guilty plea, without permission of the court, would attenuate the usefulness of the plea bargaining process and would render ineffective the long-established practice of permitting defendants to enter guilty pleas while the trial court investigates the basis for the proposed disposition. Such a holding would emasculate the presentation process as described under Rule 733(c)(1), as it would render meaningless that part of the subsection which provides that the judge may defer his acceptance of the plea agreement. Thus, we find no abuse of discretion in the court's refusal to permit appellant to withdraw his guilty plea.

Appellant asserts for the first time before this Court that the trial court did not act in the interests of justice when it declined to permit him to withdraw his plea after telling

him, "You still have a right to withdraw your plea, if you care to do so, anytime before the court finally accepts it." Upon a review of the record, however, it is apparent that at this point in the proceedings the court was addressing Ms. Pfau, and not appellant. The court had just engaged in a discussion with defense counsel regarding Ms. Pfau's medical condition, including her past surgery and her asserted need for medical treatment in the future. The court had expressed a desire to review her records and discuss the nature and extent of Ms. Pfau's future medical needs. In light of the impact which medical problems may have upon a defendant's desire to plead guilty, it is understandable why the court, in the exercise of its discretion, might have extended permission to withdraw to Ms. Pfau while not doing so in the case of appellant. Appellant did not have such problems. Moreover, he was a much older, obviously more mature and a better educated individual, and, as the record discloses, he played a clearly dominant role in the couple's relationship. We find no merit in his contention.

We, therefore, uphold appellant's conviction by affirming the judgment of the Court of Special Appeals.

*Judgment affirmed.*
*Appellant to pay the costs.*

*Davidson, J., dissenting:*

The majority here states that the "[a]ppellant asserts ... that the trial court did not act in the interests of justice when it declined to permit him to withdraw his plea after telling him, 'You still have a right to withdraw your plea, if you care to do so, anytime before the court finally accepts it.' " [1] It then finds no merit in this contention.

---

1. As stated in the appellant's brief, this contention is as follows:

"The trial court, which had tentatively, but not finally, accepted Appellant's tendered guilty plea pending outcome of a pre-sentence investigation report, abused its discretion by prohibiting Appellant from withdrawing the tendered plea prior to the trial court's final acceptance after telling Appellant he would be allowed to withdraw the plea anytime before the trial court finally accepted it."

The majority initially infers that the trial court's statement was addressed solely to Pfau and not to Blinken, an inference that is not necessarily supported by the record and which, even if supported by the record, would be irrelevant. The majority then asserts:

"The [trial] court had expressed a desire to review [Pfau's] records and discuss the nature and extent of Ms. Pfau's future medical needs. In light of the impact which medical problems may have upon a defendant's desire to plead guilty, it is understandable why the court, in the exercise of its discretion, might have extended permission to withdraw to Ms. Pfau while not doing so in the case of appellant."

In so doing, the majority infers that the trial court's purpose in reviewing Pfau's medical history was to determine whether her tendered guilty plea was knowing and voluntary and, based upon this inference, further infers that the trial court intended to differentiate between Pfau and Blinken with respect to their right to withdraw their tendered guilty pleas. In my view, the record does not support these inferences. Accordingly, I respectfully dissent.

The record here shows that on 1 November 1979, two cases, one involving Kari Lou Pfau and the other involving Neal Blinken, were simultaneously called for trial. Pfau and Blinken were both then present in the courtroom. At that time, counsel for both indicated that Pfau and Blinken desired to withdraw their previously tendered not guilty pleas. Pfau then tendered guilty pleas to the first five counts of the indictment against her, and Blinken tendered guilty pleas to the first four counts of the indictment against him. The trial court asked both Pfau and Blinken to stand and then described the procedure to be followed in determining whether to accept their tendered pleas. The trial court said:

Based on the record, it is my view, as will be set forth in this dissenting opinion, that the appellant relies on statements of the trial court, other than that quoted by the majority, to show that the trial court told him he would be allowed to withdraw his tendered plea until it was finally accepted.

" . . . I will address the question to both of you and ask Miss Pfau to answer first and then Mr. Blinken to answer second."

Both Pfau and Blinken were then sworn.

In accordance with the outlined procedure, the trial court questioned Pfau and Blinken about the terms of each of their tendered plea agreements and the waiver of rights required before acceptance of a tendered guilty plea. Thereafter, the following colloquy took place:

"THE COURT: Miss Pfau . . . [d]o you understand that if you plead guilty the sentence will be according to the plea agreement, *and if not finally accepted you may withdraw your plea?*

MISS PFAU: Yes, I understand.

THE COURT: And you, sir?

MR. BLINKEN: I also understand, Your Honor." (Emphasis added.)

After finding that Pfau had tendered her plea voluntarily and knowingly, the trial court said:

*"That the defendants [sic] pleas are accepted tentatively but not finally by the Court, provided* there is a factual basis for the pleas and *the representation* made here today *concerning the defendant are confirmed by a PSI [Presentence Investigation] report."* (Emphasis added.)

Immediately thereafter, the trial court found that Blinken had tendered his plea voluntarily and knowingly and said:

*"That the defendant's pleas of guilty are tentatively but not finally accepted by the Court provided* there is in fact a basis for the pleas and *the representations* made here today *are confirmed by a PSI report as to the defendant."* (Emphasis added.)

A single statement of facts was presented to establish the factual basis underlying both tendered pleas, and the trial court found that basis to be adequate with respect to both Pfau and Blinken. In response to a query from the trial court, defense counsel offered representations concerning the personal history and criminal records of both defendants, including Pfau's medical history, to justify acceptance of both tendered plea agreements. More specifically, the following colloquy then took place:

"THE COURT: . . . Now, Mr. Sutley, I want you to proffer at this time the representation to justify the Court in accepting this plea agreement.

MR. SUTLEY [Defense Counsel]: . . . Neither defendant has a record of criminal conviction in this state or any other state. Miss Pfau, throughout the last year, has suffered from various physical ailments necessitating her hospitalization on several occasions for operations throughout the past year. Nothing terminal. She has been under medical care for a considerable period of time and she is twenty-one years of age, with no record of conviction for either defendant.

. . .

THE COURT: And I want . . . a very complete report on her health and operations.

Now as I understand it Mr. Blinken has no previous adult criminal record?

MR. SUTLEY: That is correct, Your Honor.

THE COURT: And he is thirty-five and she is twenty-one. How long have they been living together?

MR. SUTLEY: Five years.

MISS PFAU: Four years.

MR. SUTLEY: They are presently engaged, Your Honor, to be married.

THE COURT: Anything else?

MR. SUTLEY: No, Your Honor."

Subsequently, the trial court summarized the terms of Blinken's tendered plea agreement and then the terms of Pfau's tendered plea agreement. Thereafter, the trial court said:

"I want Miss Pfau to make sure she hears everything I am saying. *You still have a right to withdraw your plea, if you care to do so, anytime before the Court finally accepts it.*

. . .

Do you fully understand that, Miss Pfau?

MISS PFAU: Yes.

THE COURT: *So, as I have indicated, the Court is accepting these tentatively, but not finally, provided the representations made here today are confirmed by a PSI report as to each defendant."* (Emphasis added.)

In discharging the jury, the trial court explained the terms of Blinken's and Pfau's tendered plea agreements and then said:

*"The Court* accepted this on representation, *tentatively accepted this, on representations that neither of the parties have had any previous criminal record.*

. . .

So this is why we don't need your services any further today, because *the Court has taken these plea agreements and guilty pleas, tentatively, subject to confirmation by investigation* by the Division of Parole and Probation, which we call *a presentence investigation report,* which is usually very thoroughly done, in which their background is

checked out, in which their criminal record, if any, is thoroughly checked, and today we have very sophisticated criminal information systems where convictions are recorded both by the FBI and our own Maryland Criminal Information System.

*So it is taken tentatively subject to the fact that the representations made to the Court today as to their background, the medical history of Miss Pfau are confirmed by that report....*" (Emphasis added.)

In my view, the record establishes that the trial court's statement that, "You still have a right to withdraw your plea, if you care to do so, anytime before the court finally accepts it," was addressed to Blinken as well as to Pfau. Moreover, even if the statement was addressed solely to Pfau, I would conclude, based on the record, that Blinken had the right to withdraw his tendered plea.

The procedures utilized in this proceeding indicate that the trial court did not intend to differentiate between Pfau and Blinken with respect to their right to withdraw their tendered pleas. Blinken and Pfau were defendants in a consolidated proceeding. They were both represented by the same counsel and were both present when their guilty pleas were tendered. The trial court recognized that the terms of the individual plea agreements were integrally interrelated because Pfau's probation was an inducement to and a condition of Blinken's plea agreement. The procedure established by the trial court was to address a single question to both Blinken and Pfau and to have Pfau answer first and Blinken answer second. This procedure was followed when the trial court questioned Pfau and Blinken with respect to the terms of their tendered plea agreements and the waiver of rights required for acceptance of a guilty plea. A single statement of facts was presented to establish the factual basis underlying both tendered pleas and the trial court found that basis to be adequate with respect to both. Representations justifying the trial court in accepting each of the tendered plea agreements were presented by counsel in a single statement.

More important, the trial court initially told both Blinken and Pfau that "if not finally accepted you may withdraw your plea." Thus, it expressly stated that Blinken as well as Pfau had the right to withdraw their tendered pleas until finally accepted. The trial court then told them individually that their tendered pleas were "accepted tentatively but not finally by the Court." Thus, the trial court made it clear that the consequence of the tentative acceptance of their tendered pleas was that both had the right to withdraw them until finally accepted. After emphasizing that it wanted Pfau to hear what it was saying, the trial court reiterated that:

"You still have a right to withdraw your plea, if you care to do so, anytime before the Court finally accepts it."

When viewed in the context of this proceeding, the trial court's concern that Pfau hear what it was saying does not necessarily support an inference that the statement was addressed solely to Pfau.

Moreover, the trial court's statement, even if addressed solely to Pfau, was completely consistent with its previous statements, clearly addressed to both, that established that Blinken as well as Pfau had the right to withdraw their tendered pleas. In addition, when the trial court made the statement, it did not express an intent to differentiate between Pfau and Blinken with respect to their right to withdraw their tendered pleas. Under these circumstances, even if it is assumed that the trial court's statement was addressed solely to Pfau, it must be regarded as nothing more than a reiteration, with respect to Pfau, of the trial court's previous statement, clearly addressed to both, that their tendered pleas could be withdrawn until finally accepted. It cannot be regarded as having any impact whatsoever on Blinken's previously established right to withdraw his tendered plea.

Immediately after making the statement, the trial court, clearly addressing both Pfau and Blinken, repeated that it was "accepting these [pleas] tentatively, but not finally." Thus, the trial court, having previously made it clear that

the consequence of the tentative acceptance of their tendered pleas was that both had the right to withdraw them, reinforced the fact that both their tendered pleas could be withdrawn.

In my view, the trial court expressly indicated that Blinken as well as Pfau had the right to withdraw their tendered pleas. Under the circumstances here, the majority's assertion that the trial court's statement was addressed solely to Pfau and not to Blinken is irrelevant.

Finally, on two occasions, the trial court expressly told both defendants that it was accepting their tendered plea agreements and guilty pleas tentatively, but not finally, provided their representations concerning their personal histories were confirmed by a PSI report. In discharging the jury, the trial court expressly said that both plea agreements and guilty pleas were

"taken tentatively subject to the fact that the representations made to the Court today as to their background, *the medical history of Miss Pfau* are confirmed by that report. . . ." (Emphasis added.)

In addition, the trial court expressly found that both Pfau's and Blinken's guilty pleas were knowing and voluntary.

Under these circumstances, the trial court's sole purpose in seeking a presentence report, including Pfau's medical history, was to confirm the representations which had been made concerning Pfau's and Blinken's criminal records and Pfau's medical history in order to determine whether to accept the tendered plea agreements which, in the case of Pfau, provided for probation rather than imprisonment, partly because she was allegedly ill. Indeed, having previously found Pfau's tendered plea to be knowing and voluntary, the trial court's purpose could not have been to determine the impact which her "medical problems [might] have upon [her] desire to plead guilty." Accordingly, the majority's inference that the trial court wanted Pfau's medical records to determine her desire to plead guilty is unsupported by the record.

In sum, in my view, there is nothing in the record to indicate that the trial court intended to differentiate between Pfau and Blinken with respect to their right to withdraw their tendered pleas. There was nothing in the procedures utilized by the trial court to indicate an intent to differentiate between them. There was no difference in the purpose for which the trial court sought the presentence investigation report, including Pfau's medical history. Most important, the trial court expressly stated to both Pfau and Blinken that they could both withdraw their tendered pleas until finally accepted. In the absence of any inconsistent statement or indication to the contrary, I can only conclude that this record establishes that the trial court made an express commitment to Blinken that he had the right to withdraw his tendered plea until it was accepted.

The record here establishes that Blinken asked to withdraw his tendered plea before it was finally accepted. The trial court denied Blinken's request. In so doing, the trial court failed to honor its express commitment to Blinken. This constituted an abuse of discretion. In my view, fundamental fairness requires reversal.

Judges Digges and Eldridge authorize me to say that they concur in the views herein expressed.