# William P. Preston and H. P. Hepburn, *vs.* Simon Leighton, use of Kelly, Ball and Co.

Where a case comes up upon a second appeal, and the facts are substantially the same as those upon which the first appeal was tried, whatever was decided on that appeal must govern on the second.

Where a prayer asserts two propositions it is properly rejected if either be erroneous, though the other may be correct.

A mortgage was executed of all the goods and fixtures then in a certain store and covering also the subsequently acquired goods. After this mortgage, and after some of the goods had been sold by the mortgagors, and others purchased, parties claiming under a subsequent deed tortiously took possession of all the property and sold it, Held:

That the burthen of proof was on such parties, to show what proportion of the property which was in the store at the date of the mortgage came into their hands: every presumption is made against a wrong doer.

Where there is no evidence upon which to base the hypothesis of a prayer it is erroneous.

The appellants cannot complain of error in a proviso added to a prayer, which would operate for their benefit

The notice which would vitiate a conveyance, under the act of 1834, ch. 293, is not a technical or constructive notice, but an actual notice derived from a knowledge of the condition of the grantor.

APPEAL from the Superior Court of Baltimore city.

This is the second appeal in this case, the first being reported in 9 *Gill*, 201. The action was *assumpsit* by the appellee against the appellants. The pleadings and all the facts in the case are the same as in the former appeal, with the exception of the additional proof by the defendants, that Rosenthal and Mosher applied for the benefit of the insolvent laws, on the 31st of January 1845, showing by their schedule $9000, of debts due by them, and no property but that sold by the defendants, and that Glenn was duly appointed and bonded as their permanent trustee.

The only other facts necessary to be stated for an understanding of this appeal are, 1st. That the mortgage by Rosenthal and Mosher, to the appellee Leighton, of the 21st of January 1845, purported to convey all the goods, wares and merchandise, and all the fixtures, then in the store occupied by the mortgagors, and "also any and every increase, accumulation or accession of goods, wares and merchandise, which may be made or added to the present stock on hand or in store, from this day forth until the above debt or sum of $330 is fully liquidated and paid," which mortgage was not recorded until the 3rd of February 1845. 2nd. That at the date of this mortgage the property embraced in it was under a distress for rent of the store, laid on it on the 18th of January 1845, for rent in arrear, due on the 1st of said month, and was also levied on by a *fi. fa.* at the suit of one Wyeth. 3rd. That the mortgagors remained in possession of the mortgaged property, from the date of the mortgage until the 25th of January 1845, the date of the deed of trust to the appellants including all the property real and personal of said Rosenthal and Mosher, and all debts due to them, and all vouchers, evidences and writings, touching or concerning the same, which was recorded on the 29th of the same month, and during that time the mortgagors, with the knowledge and consent of the mortgagee, sold some of said goods and bought others, which they put into the store, together with those on hand at the date of the mortgage, but the witness

12    v.6

could not say how many or to what amount or value they so sold or bought. And 4th. That on the 27th of January 1845, the appellants, under their said deed of trust, took possession of the said property, and upon undertaking to satisfy the said distress for rent, and *fi. fa.*, sold the same on the 7th of February following, for the net amount of $1203.01.

*Exception.* Upon the aforegoing evidence, the defendants asked the instructions in substance as follows:

1st. If the jury find that after the execution of the mortgage to the plaintiff, goods were brought into said store and others sold out of it, with the privity of plaintiff, in the manner stated by the witness, then the mortgage did not pass the title to the goods so subsequently acquired, and to enable the plaintiff to recover for a specific amount, it is necessary he should satisfy the jury by evidence, of the proportion of money received by defendants, as the proceeds of the goods remaining in the store at the execution of the mortgage, as distinguished from those afterwards brought therein.

2nd. If they find that at the time of executing said mortgage, it was understood and agreed between the parties thereto, that Rosenthal and Mosher were to remain in possession of the mortgaged property, until the note therein recited fell due, and were in their own name to sell and convey to any purchaser, as of the goods thereby conveyed, and to buy others which were to be considered as between the parties, subject to said mortgage, then the defendants, being subsequent purchasers by their deed of trust, cannot be charged by virtue of said mortgage, unless they had actual notice thereof.

3rd. This prayer was abandoned in argument in this court by the appellants.

4th. If they find that the deed of trust to the defendants was recorded prior to the recording of the mortgage, under which plaintiff claims, then it takes precedence over said mortgage, provided they find it was made *bona fide.*

The plaintiff then asked the following instructions.

1st. This prayer is the same as the first prayer of the plaintiff on the former appeal, (see 9 *Gill,* 202,) with the follow-

ing proviso. Provided the jury shall further find, that after deducting whatever money may have been proved to have been paid by the defendants, out of the proceeds of sales, enough for that purpose, of the goods which belonged to the mortgagors at the date of said mortgage, and which were so mortgaged by them, came into the possession of and was solely the defendants, and that the burthen of proof that there was not enough for that purpose lies on the defendants.

2nd. If they find the facts stated in the foregoing prayer, the plaintiff is entitled to recover as therein stated, even if they believe that Rosenthal and Mosher were actually insolvent at the date of the mortgage, unless they also find that the plaintiff had, at the time of the execution thereof, actual notice of their insolvency, derived from a knowledge of their condition.

The court (FRICK, J.,) rejected all the defendants' prayers and granted those of the plaintiff, and to this ruling the defendants excepted, and the verdict and judgment being against them appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Robert J. Brent* for the appellants.

The first point which arises in this case is in regard to the rejection of the first prayer of the appellants. The first proposition in this prayer, that the mortgage did not pass title to the goods subsequently brought into the store, is undoubtedly well founded in authority. 50 *Eng. C. L. Rep.*, 379, *Lunn vs. Thornton.* 53 *Do.*, 850, *Gale vs. Burnell.* 46 *Do.*, 245, *Tapfield vs. Hillman.* 2 *Cushing*, 295, *Barnard vs. Eaton.* The remark of Judge Chambers in the case of *Robey vs. Hannon*, 9 *Gill*, 440, that a deed would pass after acquired property is a mere *obiter dictum*, and is not sustained by the authorities.

The second proposition contained in this prayer merely claims to throw upon this mortgagee the *onus* of *distinguishing*

*his mortgaged goods* from that confusion with other goods which was the result of his own conduct and acquiescence, while we assert that the prayer might well have asked much more by claiming a *forfeiture* of all the mortgaged goods as the legal consequence of the fraudulent conduct of the mortgagee. The mortgage does not allow the mortgagors to remain in possession, and the mortgagee might have stopped their selling the mortgaged goods at once by taking possession before the maturity of the note. 6 *G. & J.*, 72, *Jamieson vs. Bruce.* But this would not answer his and their purpose. Hence the mortgage is drawn to cover all goods that the mortgagors might subsequently buy on credit. But he does more; he stands by and allows this ostensible ownership over his property with full knowledge of the facts, and no objection is shown on his part. Now would the law enable him to set up his secret mortgage against those who subsequently purchased goods at that store? In such case it would rather hold that he has *waived* his legal rights by acquiescing in the sale of the property without disclosing his lien. But he not only waives in favor of purchasers, but he must equally do so in favor of creditors who are induced to sell goods on the credit furnished by this ostensible ownership, or who grant *indulgence* to their pre-existing debtors on the faith that they are doing business on an unincumbered stock in trade, and this is the principle on which the law postpones even a dormant or sleeping execution in favor of subsequent creditors. 17 *Johns.*, 276, *Kellogg vs. Griffin.* 2 *Kent*, 528. If execution creditor after levy on goods *suffers them* to remain in the hands of the debtor an unreasonable time, it is legal evidence of the delay being his act and fraudulent towards creditors, (*Wallace's C. C. Rep.*, 178, *United States vs. Conyngham.* 1 *Smith's Lead Cases*, 77,) and those who represent creditors are in fact creditors. 1 *Md. Rep.*, 474, *Waters vs. Dashiell.*

The suppression of the mortgage under the circumstances is a suspicious circumstance, and shows a *quo animo* to defraud, which would forfeit the otherwise legal mortgage. 2 *Md. Ch. Dec.*, 281, *Gill, vs. Griffith & Schley.* 53 *Eng,*

*C. L. Rep.*, 862. Where property is perishable and consumable in the use, the debtor's continuing in the use and possession is evidence of fraud in fact, (3 *Yearg.*, 502, *Darwin vs. Handley.* 4 *Do.*, 541, *Sommerville vs. Horton.* 3 *Metcalf*, 117, *Robbins vs. Parker.* 2 *Do.*, 263, *Briggs vs. Parkman*,) *a fortiori*, where the debtor is allowed to sell the property or to have a beneficial use in it. 3 *New Hamp.*, 415, *Coburn vs. Pickering.* 6 *Alabama*, 178, *Wiswall vs. Ticknor.* 7 *Humph.*, 179, *Gibbs vs. Thompson.* 16 *Ohio*, 547, *Collins vs. Myers.* 2 *Kent*, 515, 516. But these trustees do not merely represent creditors. In a court of law they stand as legal purchasers of the goods for valuable consideration, without actual or constructive notice. That the consideration stated in the deed is valuable in law, being a trust to pay debts and responsibilities incurred, see 2 *Story's Eq.*, sec. 1229. 9 *Ves.*, 99. 8 *B. Monroe*, 68, *Collier vs. Baptist Education Society.* 13 *Wend.*, 570, *Root vs. French.* 2 *Fairfield*, 227, *Trott vs. Warren.* 8 *Cowen*, 238.

In a court of law the seal affixed to their deed imports a full and valuable consideration. *Lewin on Trustees*, 116. 2 *Kent*, 465. The appellants then are to be taken as *bona fide* purchasers of the mortgaged goods, with no notice, actual or constructive, at the date of their acquiring title and possession. Why should they be bound to show what belongs to the plaintiff and what to them, out of a confused or blended mass of goods and merchandise? In such a case the *onus* should be upon the party who caused such confusion, especially when that conduct is marked with the badges of fraud, and not upon the innocent purchaser. For cases on the doctrine of confusion and intermixture of goods, see 15 *Ves.*, 432, *Lupton vs. White.* 1 *H. & G.*, 70, *Ringgold vs. Ringgold.* 2 *Do.*, 428, *Hudson vs. Warner & Vance.* 2 *Kent*, 364. From all these cases it undoubtedly is the rule that if the bailee confuses his goods with those of the bailor, and without the latter's consent, he would forfeit all that could not be distinguished from the bailment. But suppose the *bailee* sells the confused mass to a purchaser who is ignorant of the bailment, can the latter

suffer a forfeiture, especially in favor of the bailor who was privy to this confusion, and who was actuated by a fraudulent purpose towards subsequent creditors of and purchasers from the bailee?

The evidence on which our second prayer rests is found in the fact, that the mortgage itself contemplates that the mortgagors should make additions to the stock in trade, and in the further fact that they went on with the knowledge of the mortgagee to sell the goods in the regular course of their business. This conduct of the parties, with the purpose indicated on the face of the mortgage, was evidence on which the jury might find the understanding set forth in the prayer, and if found the law would clearly annul the mortgage in favor of creditors or purchasers, as is clearly established by the cases above cited. See also 1 *Kent*, 523, 524. 43 *Law Lib.*, 50. Our fourth prayer should have been granted as it is fully authorised by the act of 1825, ch. 203, sec. 1.

The prayers of the appellee must fail if the preceding views are correct. Besides it will be seen that the sale made by the appellants was after the insolvent application of Rosenthal and Mosher, and the prayers of the appellee exclude the idea of title in the insolvent trustee, and are for this reason erroneous. 5 *Gill*, 179, *Alexander vs. Ghiselin.* 1 *Md. Rep.*, 470, *Waters vs. Dashiell.* 9 *Gill*, 179, *Malcolm vs. Hall.*

*J. M. Campbell* for the appellee.

1st. Their first prayer affirms, that the title to the goods subsequently bought did not pass by the mortgage, and that the burthen of proof to show that enough of the original stock remained to satisfy his claim lay on the appellee. It is answer enough to the first part of this prayer that the appellee set up no title, as appears by his first prayer, to the goods subsequently acquired, and that the point therefore as to the title to them was immaterial. As to the burthen of proof, it clearly lay on the appellants to show what goods were subsequently bought. The appellee could not possibly prove the fact. Had the mortgagors made such a point in any dispute between

them and the appellee, they would have been bound to furnish such evidence, as they alone would have the power to do it, and the appellants represent them, and under the deed have possession of all their books and accounts. There is no question of fraud in the case; it is simply a question of evidence. The confusion arises from the acts of the appellants; they made the sale and thus rendered the identification of the goods impossible.

2nd. Their second prayer proceeds on the hypothesis, that the appellants were purchasers by the deed of trust, and their title good against the mortgagee, unless they had actual notice of it, if the jury found that the mortgagors were, by agreement at the time of the mortgage, to remain in possession until the note secured fell due, and make sales in the meantime. This position is affirmed not merely as to the subsequently acquired property, but also to that which was owned at the time of the mortgage. There was no evidence of any such agreement as the prayer assumes. Under the mortgage the appellee could have taken possession at any time, and there is nothing to show that he ever restricted himself in the exercise of that right. But waiving this consideration, it is perfectly clear that the appellants are not purchasers. 2 *White's Lead. Cases*, 104 to 106. 11 *Paige*, 564, *Wyckoff vs. Remsen*. 2 *Story's Eq.*, secs. 1038, 1229.

3rd. Their fourth prayer assumes, that by force of the act of 1825, ch. 203, their deed as first recorded has priority over our mortgage. The first objection to this is, that it submits to the jury as a question of fact, determinable by them, the times of recording the deed and mortgage. There was no conflicting testimony on this subject, and the fact, therefore, was for the court to find. 3 *Gill*, 231, *Budd vs. Brooke*.

The second objection is, that by the act referred to the deed first recorded has precedence only where it is made *bona fide*, and on a good and valuable consideration, and the prayer omits any mention of the consideration, and only requires the jury to find *bona fides* without consideration. But apart from all technical objections, the conflict between the conveyances

contemplated by the act does not exist in the present instance. There is no conflict as to the property conveyed, because the conveyance to the appellants is not of the same property which is embraced by the conveyance to the appellee.   The conveyance to the appellants is not of the goods in the store, nor of the goods in the possession of the grantors, but only of the goods, &c., *of, or belonging to, the grantors,* which, of course, excludes what they had already conveyed to the appellants. It only conveys what the grantors had the right to convey; that is, the equity of redemption so far as the goods covered by our mortgage are concerned.   2 *White's Lead. Cases,* 104. Neither is the character of the appellants' deed such as to entitle it to a preference, even if both conveyed the identical property.   It is not a deed founded upon a consideration both good and valuable, within the meaning of the act of 1825.   11 *Paige,* 564.

4th. Our first prayer is in the language of that on the former trial, which the Court of Appeals, in 9 *Gill,* 205, say ought to have been granted.   The proviso added does not change the prayer thus sanctioned.   It merely restricts the right of recovery within narrower limits, and sets up no title to the proceeds of the after purchased goods.   Allowing the appellant such proceeds, and also all their payments, but at the same time casting the burthen of proof as to the amount of the after purchased goods upon the appellants.   The grounds on which this addition as to the *onus probandi* rests are set out in the observations above made on the appellants' first prayer.

5th. Our second prayer is a repetition of the first, with the addition of the fact of the technical insolvency of the mortgagors, and asserts the proposition that such insolvency cannot defeat the mortgage, unless the mortgagee had actual notice and knowledge at the time the mortgage was executed of the insolvency of the mortgagors.   This proposition is taken *verbatim et literatim* from the opinion of the Court of Appeals, in the case of *Cole vs. Albers & Runge,* 1 *Gill,* 422, and is for that reason correct.

TUCK, J., delivered the opinion of this court.

The present record is the same with that on which the former appeal was decided, with the addition of proof that Rosenthal and Mosher applied for the benefit of the insolvent laws, on the 31st of January 1845, and that Glenn was appointed their trustee. 9 *Gill*, 201. This additional evidence does not vary the law of the case, because by the deeds of January 21st and 25th, 1845, all the interest and title, legal and equitable, of the petitioners, had been conveyed away, and there was nothing as to this property, on which the insolvent laws could operate. *Malcolm vs. Hall*, 9 *Gill*, 177. The case being substantially the same, whatever was decided on the former appeal must govern on this.

The *first* prayer of the appellants asserts that the mortgage did not operate to convey subsequently purchased goods, and that the *onus* of showing what proportion of the property, which was in the store at the date of the instrument had passed into the hands of the defendants, was upon the plaintiff. If either of these propositions be erroneous, the prayer being an entirety, was properly rejected *Budd vs. Brooke*, 3 *Gill*, 220.

The burden of proof was upon the defendants. All the goods, fixtures, &c., in the store, had been conveyed to the plaintiff by a deed that is not impeached. Afterwards the defendants took possession of this property, or of what remained, together with the accounts and books, from which the extent of the new purchases might probably have been ascertained, and sold it at public auction, by which, the Court of Appeals said, they committed a *tort*. A few days before the execution of the deed of trust the property was abundantly sufficient to pay the plaintiff's claim, and, but for their interference, might have so remained, until disposed of according to law and the rights of persons interested. If they have by a tortious act, deprived the plaintiff of the means of proving his case, as fully as they insist he should have done, or, if, having possessed themselves of the books and accounts, they will not produce them for the purpose of explaining or rebut-

ting the case as presented on the part of the plaintiff, they cannot complain of the consequences. Every presumption is made against a wrong-doer. *Armory vs. Delamirie*, 1 *Strange.*, 504, was decided upon the ground, that the defendant had suppressed the means of ascertaining the truth by withholding the jewel, for the value of which the suit was brought. It would be unreasonable, under the circumstances in which the plaintiff was placed by the act of the defendants, to cast this burden upon him. 1 *Greenlf. on Ev.*, secs. 79, 196. For this cause the whole prayer was properly rejected, even if the first proposition therein mentioned was correctly stated as matter of law, *on which we express no opinion*.

The appellants' *second* prayer was properly refused, because there was no evidence of the supposed agreement or understanding between the appellee and his debtors, on which this prayer is based.

The appellants' *third* prayer was abandoned. Their *fourth* assumes that the deeds of the 21st and 25th of January 1845, were for the same interest in the same property. But this is not so. The plaintiff held the legal title as a security for his debt: the defendants under their deed, were entitled to the equity of redemption only. This was distinctly decided on the former appeal. The facts on which this prayer was submitted were then before the court, and the question was raised by the plaintiff's first prayer, which the court said should have been granted. Yet they held that the defendants were only entitled to the proceeds of sale, *provided* they satisfied the mortgage debt. 9 *Gill*, 205. The act of 1825, ch. 203, therefore, cannot be said to have any application to the case.

The appellants have no reason to complain of the plaintiff's prayers, as granted. The first is identical in terms with one that had been approved of on the former appeal, with the addition of a proviso limiting the plaintiff's recovery to a portion of the proceeds of sales in the defendants' hands. Of this qualification they cannot complain, because, if erroneous, it would operate for their benefit, besides being the view of their liability, as presented by their first prayer, except as to

the *onus* of proof, which, as we have seen, the law placed upon themselves and not upon the plaintiff. The second of the plaintiff's prayers, merely affirms what the Court of Appeals in *Cole vs. Albers & Runge*, 1 *Gill*, 422, had said, was the true construction of the act of 1834, ch. 293, viz: "That the notice which is to vitiate a conveyance, is not a technical or constructive notice, but an actual notice, derived from a knowledge of the condition of the mortgagors."

*Judgment affirmed.*