## CLAUDE MAUDE DIGGS et al.

### *vs.*

## ETHEL CLAUDE CORTLAND SMITH.

*Former appeals: effect of decision on the parties.*

Where a cause is remanded for a new trial, and is again appealed, the adjudication on the former appeal is the law of the case, so far as the facts then presented are concerned. p. 102

On a prior appeal in the case of a caveat to a will, rulings were reversed because of the insufficiency of evidence to sustain the issues, and the cause was remanded; on appeal from the rulings at the second trial, it was: *Held,* that the new evidence offered was insufficient to sustain the burden of proof, and that the action of the court in withdrawing the case from the consideration of the jury was proper.                           p. 105

*Decided January 12th, 1917.*

Appeal from the Court of Common Pleas of Baltimore City. (STUMP, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Edgar Allan Poe* (with whom were *J. Kemp Bartlett, L. B. Keene Claggett, Carl R. McKenrick* and *Robert D. Bartlett* on the brief), for the appellants.

*Charles McHenry Howard* and *Wm. L. Marbury,* for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

The present, like the first appeal in this case (128 Md. 394), is from the rulings of the trial Court upon issues sent from the Orphans' Court of Baltimore City, in regard to the will of James Wakefield Cortland.

The issues, two in number, were whether or not the paper writing, purporting to be the last will and testament of James Wakefield Cortland, and executed in February 11th, 1913, was procured by undue influence; and second, whether the said paper was procured by the exercise of fraud practiced upon Mr. Cortland.

Without objection a verdict was rendered in favor of the will upon the first of these issues during the first trial, so that the sole issue presented in the case after the remand by this Court, was whether the testamentary paper of Mr. Cortland was the result of a fraud which had been practiced upon him.

In the case in 128 Md., the evidence was carefully examined, and it was held that upon the evidence as contained in the record in that case, the jury should have been instructed to return a verdict for the defendant, and the case was sent back for a re-trial. The adjudication of that case fully settled the law of the case, so far as the facts then presented were concerned. *Thomas* v. *Doub,* 1 Md. 252; *Park Land Co.* v. *Baltimore,* 128 Md. 611.

All that is necessary upon this appeal is to consider to what extent additional testimony adduced at the second trial should operate to modify the conclusion then reached.

A large portion of the brief of the appellants is devoted to what amounts to a re-argument of the former case, which

was fully considered and disposed of on the former appeal and does not call for further discussion.

Conceding the truth of the facts testified to, by or on behalf of the caveators, and for the purposes of this case they must be taken to be true, there is set out a picture of duplicity, double dealing and deceit upon the part of Ethel Claude Cortland Smith toward her own kindred, rarely met within the reports of adjudicated cases.

The issue in this case, as was pointed out by JUDGE CONSTABLE in the first case, is not, was or was not Mrs. Smith guilty of deliberate deceit, falsehood and fraud, but was the will of James Wakefield Cortland, in its provisions, the result of that deceit.

There are but two witnesses produced at this trial who fairly can be claimed to add anything to the case as made out in the first trial; these are, Mrs. Katharine Claude Cortland, the mother of the caveators and caveatee, and Mrs. Harriet A. Randolph.

The most that can be claimed for the testimony of Mrs. Cortland is, that she corroborates, and to some extent strengthened, the evidence given by the caveators of the perfidiousness and duplicity of Ethel. She adds nothing whatever, to show that the provisions of the will of Mr. James Wakefield Cortland were the result, direct or indirect, of Ethel's course of conduct. Her testimony, therefore, is not directed to that which is the real issue of this case.

In regard to Mrs. Randolph the case is somewhat different. This lady in December, 1910, rented a room from Mrs. Goeghegan, one of the caveators, and a strong friendship between these two ladies followed. Mrs. Randolph testified to having met Mr. Cortland on several occasions, during some of Mr. Cortland's visits to Washington, in the winter of 1911-12. One of these meetings took place at the Shoreham, and Mrs. Randolph detailed the conversation which took place on that occasion, in which Mr. Cortland speaking of Mrs. Geoghegan said, that he did not have much sympathy for

her; "I sent her such a nice Christmas present, she not only did not acknowledge it, but two weeks afterwards she filed a caveat against me (referring to the caveat filed to the will of his father), and the whole thing to me is perfectly incomprehensible, and I do not see any reason why I should show any sympathy for Lora (Mrs. Goeghegan) do you?"

A subsequent conversation took place on F street, not far from the Ebbitt House, and in describing this, Mrs. Randolph testified as follows: I said, "Mr. Cortland, why is it you are so much interested in Ethel?" I asked that to pump him. And he said: "Well, why shouldn't I be interested in Ethel? He said she is perfectly devoted to me, she is loyal, she is sincere, and why shouldn't I? And I said, How do you know that, how do you know that Ethel is perfectly loyal to you? Why, he said, I just stated how she is; she tells me everything that goes on in the home; she tells me her mother's conversations, her sister's conversations; why should not I be devoted to her? And I said: Well, we have very few sincere friends, you know, and you want to be very sure she is loyal. And he stood for a minute, and said, I tell you one thing; if I did not know she was just as true as steel to me, and as loyal as may be, I would not do anything for her now, and when the time should come for me to pass away, not one dollar of my money would I leave her; I would leave every bit of it to the Masons."

This conversation took place about one year before the execution of the will, and Mr. Cortland's will had been executed a few days after the will of his father had been sustained, in the trial of issues as to its validity raised by a caveat filed by these caveators.

It is evident that family bitterness was engendered by the caveat which was filed to the will of the father of Mr. James Wakefield Cortland. But if the spirit evinced in the statement testified to by Mrs. Randolph, had been the dominant influence controlling Mr. Cortland in shaping the provisions of his will, namely a spirit of bitterness or ill-feeling towards

those who had been making the attack, it was to have been expected that nothing would have been left to his nephew and nieces who had been the caveators to the will of his father, and yet we find him leaving a legacy of $500 to each of these caveators.

It is clear, therefore, that with the lapse of time between the conversation had by Mrs. Randolph with Mr. Cortland, and the time of the execution of his will a year later, during most of which time the caveat was still pending, there had been a modification of his feeling with regard to his nephew and nieces; what may have brought that about, there is nothing in the evidence to show.

There is no suggestion that the legacies to the caveators resulted from any promptings upon the part of Ethel, and it follows that to have permitted the case to have gone to the jury would have been to entrust to their speculation what the causes were which led Mr. Cortland to make the disposition which he did of his property.

The additional testimony offered in this case beyond that which was presented upon the first trial, therefore, was without sufficient probative force to warrant leaving it to a jury to speculate upon what might have been the cause or causes which influenced Mr. Cortland to make the will which he did, and the action of the trial Court in withdrawing the case from the consideration of the jury was correct.

*Rulings affirmed.*