HARRY LOVEDAY, JR. *v.* STATE
OF MARYLAND

[No. 34, September Term, 1982.]

*Decided June 28, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Martha Weisheit, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*William C. Rogers, III, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

In this case Harry Loveday, Jr. challenges the ruling of the Court of Special Appeals that its decision in his first appeal to that body, and from which he did not petition for certiorari to us, became the law of the case on his second appeal and hence now operates as a complete bar to our review. He also challenges the propriety of the mandatory sentence imposed following the collapse of plea negotiations as violative of due process guaranteed by the Fourteenth Amendment and Art. 24 of the Maryland Declaration of Rights. We shall summarize the facts necessary to place these issues in proper focus.

Loveday was indicted for robbery and related offenses. Prior to trial defense counsel negotiated with the prosecutor for a plea agreement whereby Loveday would plead guilty to robbery and the State would make no recommendation as to sentence. Defense counsel related the agreement to Loveday and further advised that the probable sentence would be 10 years. Loveday rejected the plea agreement and elected a jury trial. A jury found him guilty of robbery. Prior to sentencing, the State filed a motion in the trial court, with notice to Loveday, pursuant to Maryland Code (1957, 1982 Repl. Vol., 1982 Supp.), Art. 27, § 643B (c) and (d) that it was seeking a mandatory sentence of 25 years.

The trial court declined to grant the motion and instead sentenced Loveday to 10 years. The trial court reasoned that it was fundamentally unfair for the State to offer Loveday a substantially lesser sentence in return for his plea and then upon his refusal, to invoke the mandatory penalty statute.

The State appealed and the Court of Special Appeals vacated the sentence, *State v. Loveday,* 48 Md. App. 478, 427 A.2d 1087 (1981), and held that the provisions of Art. 27, § 643B (c) were mandatory and that the Due Process

Clause of the Fourteenth Amendment was not violated because the State failed to give Loveday notice prior to trial of its intent to seek a mandatory sentence. The intermediate appellate court remanded the case for further proceedings consistent with its opinion. Loveday did not petition this Court for certiorari.

At the resentencing hearing it was stipulated between the parties that Loveday had been previously convicted and incarcerated on two separate occasions of robbery. The State again requested the trial court to impose the mandatory 25 year sentence, which it reluctantly did.

Loveday again appealed to the Court of Special Appeals asserting this time that the imposition of the mandatory sentence under the facts of his case was a violation of due process under the Maryland Constitution. The intermediate appellate court, in affirming the lower court, concluded, in an unreported *per curiam* opinion, *Loveday v. State,* No. 759, September Term, 1981, filed February 17, 1982, that Loveday's argument "was essentially the same argument previously raised in *State v. Loveday. . . ,"* and that "Appellant's attempt to circumvent the 'law of the case' as it was declared in *State v. Loveday,* by relying on the due process provisions of Article 24 of the Maryland Declaration of Rights, rather than the due process clause of the Fourteenth Amendment" was without merit. This time Loveday requested our review and we granted his petition for certiorari.

We shall first address the issue of whether the law of the case as determined by the Court of Special Appeals is binding upon this Court. We note initially that prior to the creation of the intermediate appellate court, this Court had established a firm judicial policy against the piecemeal trial of cases. We refused to allow successive appeals in a case that posited the same questions that had been previously decided by this Court in a prior appeal of the same case. We forbade the parties, on any subsequent appeal of the same case, to raise any question that could have been raised in the previous appeal on the record as it existed in the trial court.

We stated our position and the reasons therefor rather cogently in *Fid-Balto. Bank v. John Hancock,* 217 Md. 367, 372, 142 A.2d 796 (1957):

> Once this Court has ruled upon a question properly presented on an appeal, or, if the ruling be contrary to a question that could have been raised and argued in that appeal on the then state of the record, as aforesaid, such a ruling becomes the 'law of the case' and is binding on the litigants and courts alike, unless changed or modified after reargument, and neither the questions decided nor the ones that could have been raised and decided are available to be raised in a subsequent appeal. *Moodhe v. Schenker,* [176 Md. 259]; *Smith v. Shaffer,* 50 Md. 132; *Pasarew Constr. Co. v. Tower Apts.,* 208 Md. 396, 402; *Plank v. Summers,* 205 Md. 598, 602; *Carter v. City of Baltimore,* 197 Md. 507, 513; *Cohill v. Canal Co.,* 177 Md. 412, 421; *Baltimore v. Linthicum,* 170 Md. 245, 249; *Chayt v. Board of Zoning Appeals,* 178 Md. 400, 403, 404.

*See Condry v. Laurie,* 186 Md. 194, 46 A.2d 196 (1945); *Marx v. Ensor,* 146 Md. 603, 127 A. 480 (1924); *Diggs v. Smith,* 130 Md. 101, 99 A. 952 (1917); *McLaughlin v. Barnum,* 31 Md. 425 (1869); *Preston v. Leighton,* 6 Md. 88 (1854). However, the establishment of the Court of Special Appeals as an additional step in the appellate procedure of this State presents a novel issue as to the application of the law of the case doctrine. We must determine whether a judgment of the Court of Special Appeals on an earlier appeal in the same case constitutes the law of the case on review by this Court of a second judgment in the same case where the first judgment was not appealed.

While novel to us, the issue has been decided by our sister states and the U. S. Supreme Court. Some states have held that the prior decision of the intermediate court becomes the law of the case and binds the court of last resort. *See R.O.A. Motors Inc. v. Taylor,* 220 Ga. 122, 137 S.E.2d 459 (1964);

*South Bend Home Tel. Co. v. Beaning,* 181 Ind. 586, 105 N.E.
52 (1914); *Clore v. Davis,* 19 Ky. L. Rptr. 353, 40 S.W. 380
(1897); *Huntington v. Westerfield,* 119 La. 615, 44 So. 317
(1907); *Chandler v. Lafferty,* 282 Pa. 550, 128 A. 507 (1925);
*Life & Casualty Ins. Co. v. Jett,* 175 Tenn. 295, 133 S.W.2d
997 (1939).

Other states have concluded that a judgment of an
intermediate appellate court is not binding on the highest
court. *See City of Pueblo v. Shutt Inv. Co.,* 28 Colo. 524, 67
P. 162 (1901); *Relph v. Bd. of Ed. of DePue, etc.,* 84 Ill. 2d
436, 420 N.E.2d 147 (1981); *Weiner v. Pictorial Paper Pack-
age Corp.,* 303 Mass. 123, 20 N.E.2d 458 (1939); *Jones v.
Keetch,* 388 Mich. 164, 200 N.W.2d 227 (1972); *Orleans
Dredging Co. v. Frazie,* 179 Miss. 188, 173 So. 431 (1937);
*Spartan Leasing, Incorporated v. Brown,* 285 N.C. 689, 208
S.E.2d 649 (1974); *New Amsterdam Casualty Company v.
Popovich,* 18 N.J. 218, 113 A.2d 666 (1955); *Walker v. Gerli,*
257 A.D. 249, 12 N.Y.S.2d 942 (1939); *Roach v. Los Angeles
& S.L.R. Co.,* 74 Utah 527, 280 P. 1053 (1929).

The New York case of *Walker* stresses that the principle of
the law of the case is not a hard-and-fast rule:

> The law of the case, like the principle of stare
> decisis, is a rule of comity or convenience. Since
> from its very nature, it involves the effect of orders
> which are interlocutory, it must be distinguished
> from res adjudicata. Accordingly, its effect is lim-
> ited to a court of co-ordinate jurisdiction which ordi-
> narily should not disregard an earlier decision on
> the same question in the same case. . . . The rule
> does not apply in a court which is required to review
> the later order on appeal and which, therefore,
> ought not to be concluded by an earlier decision,
> interlocutory in character, made by a court of
> subordinate jurisdiction from which no appeal was
> taken. [*Id.* at 944 (citations omitted).]

The United States Supreme Court has been steadfast in
ruling that prior decisions of intermediate appellate courts

cannot bind it upon a subsequent appeal. In *Panama Railroad v. Napier Shipping Co.,* 166 U.S. 280, 17 S.Ct. 572, 41 L.Ed. 1004 (1897), a libel was filed to recover damages sustained by the libellant through injuries received by its steamer. The District Court for the Southern District of New York dismissed the libel whereupon an appeal was taken to the Circuit Court of Appeals for the Second Circuit which reversed the judgment and remanded for assessment of damages. The Supreme Court rejected the assertion that it was limited solely to the question of damages because the writ of certiorari was issued after the decree of the trial court had been reversed and remanded and a second appeal had been taken to the Circuit Court of Appeals. The Court stated:

> If, under such circumstances, this court were powerless to examine the whole case upon certiorari, we should then be compelled to issue it before final decree, whereas as was recently said . . . it is and generally should be issued only after a final decree. . . . [W]hile the Court of Appeals may have been limited on the second appeal to questions arising upon the amount of damages, no such limitation applies to this court, when, in the exercise of its supervisory jurisdiction it issues a writ of certiorari to bring up the whole record. Upon such writ the entire case is before us for examination. [*Id.* at 284 (citations omitted).]

In *Hamilton-Brown Shoe Co. v. Wolf Brothers Co.,* 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629 (1916), an Ohio corporation brought suit in the Circuit Court of the United States for The Eastern District of Missouri, Eastern Division, alleging trademark infringement for certain shoes. The suit was dismissed and upon appeal the Circuit Court of Appeals held that there had been no infringement because the object involved was not the subject of a valid trademark. However, the appellate court held that the complainant was entitled to be protected against unfair trade and the circuit court decree was reversed. The Supreme Court denied certiorari. Thereafter, the circuit court passed a decree granting an

injunction and referring the matter to a master for account-
ing of the damages and profits for which the defendant might
be liable. Both parties filed exceptions to the master's deter-
mination and the District Court (successor of the Circuit
Court) overruled those of the complainant, sustained those
of the defendant, and imposed only nominal damages upon
the defendant. The complainant appealed to the Circuit
Court of Appeals which reversed the decree. The Supreme
Court made the following comments:

> It is contended that this question is settled
> otherwise, at least as between these parties, by the
> decision of the circuit court of appeals on the first
> appeal and our refusal to review that decision upon
> complainant's petition for a writ of certiorari, and
> that the only questions open for review at this time
> are those that were before the Court of Appeals
> upon the second appeal.
>
> * * *
>
> The decree that was sought to be reviewed by
> certiorari at complainant's instance was not a final
> one, a fact that of itself alone furnished sufficient
> ground for the denial of the application; besides
> which it appears, by reference to our files that the
> application was opposed by the present petitioner
> upon the ground that the case, however important
> to the parties, involved no question of public inter-
> est and general importance, nor any conflict be-
> tween the decisions of state and Federal courts, or
> between those of Federal courts, of different cir-
> cuits.
>
> It is, of course, sufficient evidence that the refusal
> of an application for this extraordinary writ is in no
> case equivalent to an affirmance of the decree that
> is sought to be reviewed. And, although in this
> instance the interlocutory decision may have been
> treated as settling "the law of the case" so as to
> furnish the rule for the guidance of the referee, the
> District Court, and the Court of Appeals itself upon

the second appeal, this court, in now reviewing the final decree by virtue of the writ of certiorari, is called upon to notice and rectify any error that may have occurred in the interlocutory proceedings. [*Id.* at 257-58.]

*See Davis v. Ohara,* 266 U.S. 314, 45 S.Ct. 104, 69 L.Ed. 303 (1924) (ruling by state supreme court that its decision was law of case does not preclude U.S. Supreme Court from re-examining the question); *Mercer v. Theriot,* 377 U.S. 152, 84 S.Ct. 1157, 12 L.Ed.2d 206 (1964) (it is settled that U.S. Supreme Court may consider questions raised on first appeal to Court of Appeals as well as those raised on second appeal).

As we see it, the United States Supreme Court espouses the sounder approach to resolution of the first issue and thus, we hold that the law of the case doctrine does not apply to this court which is required to review judgments of subordinate courts. To hold otherwise, would thwart the purpose of Maryland Code (1980 Repl. Vol.), § 12-201 of the Courts and Judicial Proceedings Article which grants power to this Court to review judgments of the Court of Special Appeals.[1] Accordingly, we hold that the failure of Loveday to petition for a writ of certiorari to review the first judgment of the Court of Special Appeals does not preclude this Court, upon granting the writ from the second judgment of that court, from reviewing the entire record and rendering any judgment and making any order which it deems appropriate in the circumstances and consistent with the 800 Rules.

---

1. Section 12-201 states:

   Except as provided in § 12-202 of this title, in any case or proceeding pending in or decided by the Court of Special Appeals upon appeal from a circuit court or an orphans' court or the Maryland Tax Court, any party, including the State, may file in the Court of Appeals a petition for certiorari to review the case or proceeding. The petition may be filed either before or after the Court of Special Appeals has rendered a decision, but not later than the time prescribed by the Maryland Rules. In a case or proceeding described in this section, the Court of Appeals also may issue the writ of certiorari on its own motion.

We turn then to address the issue of whether the imposition of the mandatory sentence following the collapse of plea negotiations was a violation of due process. This Court has recognized the important role that plea bargaining plays in the criminal justice system. In *State v. Brockman,* 277 Md. 687, 693, 357 A.2d 376 (1976), we stated that "plea bargains, when properly utilized, aid the administration of justice and, within reason, should be encouraged." We emphasized that the standard to be applied in plea negotiations is "one of fair play and equity under the facts and circumstances of the case." *Id.* at 697. We have required prosecutors to comply with the terms of plea agreements and have reversed convictions where there were violations of the agreement by the State.[2] Thus, we have adhered to the principles enunciated by the Supreme Court in *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), that "when a plea rests in any significant degree on a promise or agreement of the prosecutor so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." [3]

---

**2.** In Kisamore v. State, 286 Md. 654, 409 A.2d 719 (1980), the defendant had entered into a plea agreement whereby he would plead guilty if the sentence imposed would be no more than three years. The judge agreed to the plea. A problem arose because Kisamore was represented by the Public Defender's office and the attorney handling the case felt that there would be a conflict of interest in representing both him and another man who had confessed to the same crime. Accordingly the attorney had the case postponed to enable Kisamore to obtain other counsel. When the proceedings were next called to trial they were before a different judge who denied Kisamore's motion to compel compliance with the plea bargain. The judge ruled that there had never been a completed agreement since the case had been postponed. Kisamore was convicted and sentenced to a ten year term. The Court of Special Appeals affirmed; we reversed and said that "[t]o allow the plea to stand would be to permit the state to repudiate its bargain with impunity." *Id.* at 664.

**3.** In Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the defendant entered a plea of guilty "on condition that no sentence recommendation would be made by the prosecutor." A different prosecutor than the one who had negotiated the plea appeared at the sentencing and recommended that the maximum term be imposed. The Supreme Court reversed the defendant's conviction, holding that the defendant was entitled to relief and that it was irrelevant that the breach of the agreement was caused by inadvertence or that the sentencing judge may not have been influenced by the prosecutor's recommendation.

In the instant case, Loveday maintains that the prosecutor was duty bound to advise him that if he did not accept the plea bargain that the prosecutor would try him and seek a mandatory sentence of 25 years pursuant to § 643B (c) of Art. 27. Implicit in this argument is that if Loveday understood this alternative, he would have been armed with information so as to make an intelligent decision. Thus, Loveday contends the failure to disclose this alternative and the prompt invocation of the mandatory procedure after his conviction is a clear indication of bad faith and a denial of due process.

The facts indicate that the State offered Loveday a bargain: if he pled guilty to robbery, the State would remain silent and offer no recommendation as to sentence. Defense counsel advised Loveday that the probable sentence would be 10 years. Loveday promptly rejected this bargain and the State maintains that the rejection placed the parties back to square one.

However, Loveday persists that when the State decided to seek the mandatory sentence under Article 27, § 643B (c) following the breakdown of plea negotiations, this amounted to prosecutorial vindictiveness and a denial of due process. The thrust of Loveday's argument is that in fairness the State should have given him notice of its intent to seek a mandatory sentence during the plea negotiations.

Article 27, § 643B (c) and (d) provide that any person convicted a third time of a crime of violence, having previously served at least one term of confinement for one of said violent crimes is to be sentenced for a period not less than twenty-five years.[4] There is no discretion in the trial court,

---

4. Section 643B. Mandatory sentences for crimes of violence.

(c) Third conviction of crime of violence. — Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, § 11. A separate occasion shall be considered one in which the second or succeeding offense is

provided the State complies with the procedure set forth in Md. Rule 734c which requires notice to the defendant 15 days prior to sentencing. At the sentencing procedure, if the defendant can demonstrate that the alleged crimes are not crimes of violence or that the proceedings are defective, *e.g.,* that the defendant unlawfully lacked counsel, then the statutory mandate may not be carried out. However, if the statutory requirements are met, the sentence prescribed *must* be imposed. Thus, the procedural rule applicable for mandatory penalties is different from the rule applicable for increased penalties. Md. Rule 734 [5] provides for notice prior to entry of plea or trial when the statute authorizes, but does not require, additional penalties to be imposed upon a defendant convicted as a subsequent offender.[6]

In the case *sub judice,* Loveday's exposure to a mandatory sentence depended upon whether the State could convict him a third time for a crime of violence. It was only upon the happening of this event that he became entitled to notice which he duly received. While undoubtedly such notice was traumatic to Loveday, the constitutionality of inflicting

committed after there has been a charging document filed for the preceding occasion.

(d) Compliance with Maryland Rules. — If the State intends to proceed against a person as a subsequent offender under this section, it shall comply with the procedures set forth in the Maryland Rules for the indictment and trial of a subsequent offender.

**5.** Rule 734. Subsequent Offenders.

(b) Required Notice of Additional Penalties.

Except as provided in section c of this Rule, no defendant shall be sentenced as a subsequent offender unless prior to acceptance of a plea of guilty or nolo contendere or at least 15 days prior to trial, whichever is earlier, the State's Attorney serves a notice on the defendant or his counsel that the State will seek increased punishment as authorized by law. The notice shall set forth each prior conviction to be relied upon.

(c) Mandatory Penalties.

If a mandatory sentence is prescribed by law because of a specified previous conviction, the State's Attorney, at least 15 days prior to sentencing, shall serve upon the defendant or his counsel a notice of the alleged prior conviction which would require imposition of the mandatory sentence.

**6.** *See for example* Article 27, §§ 293 (Narcotics), 366 (Lotteries).

more severe penalties upon habitual offenders is no longer open to challenge. *See Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), where the petitioners challenged West Virginia's habitual offender statute alleging that it had been applied without advance notice and only to a minority of those subject to its provisions, in violation of the due process and equal protection clauses of the Fourteenth Amendment. The Supreme Court held that due process does not require advance notice that the trial on the substantive offenses will be followed by an habitual criminal accusation. Moreover, the equal protection argument was rejected on the ground that failure to know of prior offenses of others or the exercise of reasonable selectivity in enforcement does not deny equal protection to persons who are prosecuted. This position is of long standing. For in *Graham v. West Virginia,* 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912), the Supreme Court rejected the defendant's assertions that the use of an habitual offender statute was a violation of due process and equal protection. The Court noted that "[t]he propriety of inflicting severe punishment upon old offenders has long been recognized in this country and in England. They are not punished the second time for the earlier offenses, but the repetition of criminal conduct aggravates their guilt and justifies heavier penalties when they are again convicted." *Id.* at 623.

Thus, the Supreme Court made clear in *Graham* that it is not necessary for the State to inform the defendant before trial that it intends to seek the mandatory sentence. The Court stated that:

> [T]he object in providing the alternative proceeding is to make sure that old offenders should not be immune from the increased punishment because their former conviction was not known when they were last tried. . . . Although the State may properly provide for the allegation of the former conviction in the indictment, for a finding by the jury on this point in connection with its verdict as to guilt and thereupon for the imposition of the full

sentence prescribed, *there is no constitutional man-date which requires the State to adopt this course even where the former conviction is known. It may be convenient practice, but it is not obligatory.* This conclusion necessarily follows from the distinct nature of the issue and from the fact, so frequently stated, that it does not relate to the commission of the offense, but goes to the punishment only, and therefore it may be subsequently decided. [*Id.* at 627 (emphasis added).]

Nonetheless, Loveday maintains that the State sought the mandatory sentence out of sheer vindictiveness. While it may be assumed that the State had the means to retaliate against Loveday for refusing to accept the plea bargain, the Supreme Court has made it clear that "a mere opportunity for vindictiveness is insufficient to justify the prophylactic rule" of presuming all increased sentences as violative of a defendant's constitutional rights. *U.S. v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982).

In *Goodwin* the defendant, charged with several misde-meanors, had expressed an interest in plea bargaining but changed his mind and requested a jury trial. While the mis-demeanor charges were still pending he was indicted on a felony charge arising out of the same incident. The court held that in this case a presumption of prosecutorial vindic-tiveness was not warranted and absent such a presumption the defendant had failed to establish a violation of due pro-cess. The Court distinguishes its prior cases in which pros-ecutorial vindictiveness was found because they involved the defendant's exercise of a procedural right that caused a complete retrial after he had been tried and convicted once.[7]

---

7. The Court refers to North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). In Pearce the Court held that neither the double jeopardy clause nor the Equal Protection Clause prohibits a trial judge from imposing a harsher sentence on retrial after a criminal defen-dant successfully attacks an initial conviction on appeal, but it stressed that a presumption of vindictiveness must be applied which may be overcome only by objective information in the record justifying the increased sen-tence. Blackledge involved a situation where the defendant was convicted

We applied the principles of *Goodwin* in *State v. Adams,* 293 Md. 665, 447 A.2d 833 (1982). In *Adams* the defendant successfully moved to have the State's one count charging document dismissed on the ground that it had not been signed by a judicial officer. The State then filed a new charging document charging more severe offenses arising from the same occurrence. In holding that prosecutorial vindictiveness was not shown we stated that:

> It is true, of course, that a defendant's ability to exercise his constitutional rights must not be chilled by heavy handed prosecutorial conduct. It is equally true however, that good faith alterations in a prosecutor's approach to a case should not automatically abrogate the entire potential culpability of a defendant. [*Id.* at 674.]

As we see it, the State was under no duty to inform Loveday as to what course of action it would take if he refused the bargain. As a matter of fact, the State may have subjected itself to severe criticism if it had told Loveday it would seek a mandatory sentence under the circumstances. Such a disclosure may have been coercive, though we do not suggest that this by itself would have affected the voluntariness of such a guilty plea.

Upon our review of the record here, we find no sound basis to suggest that the State was improperly motivated in seeking the mandatory sentence. The State complied with Maryland Rule of Procedure 734c, thus giving Loveday the proper notice required. The trial court, however, determined that the mandatory sentence need not be imposed. The trial court was wrong; the ten-year sentence was illegal. The

---

of assault in an inferior court having exclusive jurisdiction for the trial of misdemeanors. The court imposed a six month sentence. The state law provided that the defendant had an absolute right to a trial *de novo* in the Superior Court which possessed felony jurisdiction. After the defendant had filed his notice of appeal the State obtained a felony indictment charging him with assault with a deadly weapon. The defendant pleaded guilty and was sentenced to a five to seven year prison term. The Supreme Court reversed the conviction, holding that the likelihood of vindictiveness justified a presumption which would relieve defendants of any anxiety caused by such a retaliatory motivation on the part of the prosecutor.

State rightfully appealed. *See State ex rel. Sonner v. Shearin,* 272 Md. 502, 325 A.2d 573 (1974).

Finally, Loveday asserts that we must determine the fairness of the prosecutor's conduct under two different standards; one for the 14th Amendment and another for the Maryland Declaration of Rights. We disagree.

The requirement of due process under the 14th Amendment mandates that principles of fundamental fairness be complied with. The State's notice to Loveday of its intention to seek the mandatory sentence and the absence of an improper motive indicate to us that the requirement was fulfilled. In determining whether the due process provision of the Maryland Declaration of Rights has been complied with we look to compliance with the 14th Amendment for the language used in Article 24 of the Declaration of Rights generally has the same significance as due process of law as used in the 14th Amendment. *Attorney General v. Waldron,* 289 Md. 683, 426 A.2d 929 (1981); *Board of Supervisors of Elections v. Goodsell,* 284 Md. 279, 396 A.2d 1033 (1979); *Governor v. Exxon Corp.,* 279 Md. 410, 370 A.2d 1102 (1977) *aff'd,* 437 U.S. 117 (1978); *Bruce v. Chesapeake Bay Aff.,* 261 Md. 585, 276 A.2d 200 (1971). Thus, the imposition of the mandatory sentence satisfies both the due process provisions of the 14th Amendment and Article 24 of the Maryland Declaration of Rights.

Accordingly, we hold that the imposition of the mandatory sentence in this case (after plea negotiations had failed and Loveday was found guilty by a jury) was neither a violation of the Due Process Clause of the 14th Amendment nor Article 24 of the Maryland Declaration of Rights.

*Judgment affirmed.*
*Loveday to pay the costs.*